No. 21-17138

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

STEPHANIE SHARP, et al.,
Plaintiffs-Appellants,

v.

S&S ACTIVEWEAR, L.L.C.,
Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Nevada, No. 3:20-cv-00654-MMD-CLB
Hon. Miranda M. Du, Chief United States District Judge

———————————

**BRIEF FOR THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFFS-APPELLANTS AND IN FAVOR OF REVERSAL**

———————————

GWENDOLYN YOUNG REAMS
  *Acting General Counsel*

JENNIFER S. GOLDSTEIN
  *Associate General Counsel*

ANNE NOEL OCCHIALINO
  *Acting Assistant General Counsel*

PHILIP M. KOVNAT
  *Attorney, Appellate Litigation Services*
  *Office of General Counsel*
  *Equal Employment Opportunity Commission*
  *131 M St. NE, Fifth Floor*
  *Washington, DC 20507*
  *(202) 921-2702*
  *philip.kovnat@eeoc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................ iii

STATEMENT OF INTEREST ...........................................................1

STATEMENT OF THE ISSUE...........................................................2

STATEMENT OF THE CASE ............................................................2

    A.    Statutory Background ..............................................2

    B.    Factual Background.................................................3

    C.    District Court Decisions and Procedural
           Background ...............................................................7

ARGUMENT.....................................................................................10

           Both the female plaintiffs and the male plaintiff
           plausibly pled harassment because of sex based
           on the sexually violent and misogynistic music. .........10

    A.    The district court erred in dismissing the
           seven female plaintiffs' music-based sexual
           harassment claims with prejudice. .....................11

           1.    The female plaintiffs stated plausible
                  claims of discrimination because of
                  sex...............................................................13

           2.    The fact that a man also alleged
                  music-based sexual harassment does
                  not negate the female plaintiffs'
                  claims. ........................................................21

B.     The district court erred in dismissing the male plaintiff's music-based sexual harassment claim with prejudice..........................24

CONCLUSION ..................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 20

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ...................................................... 23, 26

*Campbell v. City of Los Angeles,*
    903 F.3d 1090 (9th Cir. 2018) .................................................. 6

*Cohen v. ConAgra Brands, Inc.,*
    16 F.4th 1283 (9th Cir. 2021) .............................................. 26

*EEOC v. National Education Association, Alaska,*
    422 F.3d 840 (9th Cir. 2005) .............................. 11, 12, 14, 17

*Ellison v. Brady,*
    924 F.2d 872 (9th Cir. 1991) .............................................. 17

*Forrest v. Brinker International Payroll Co.,*
    511 F.3d 225 (1st Cir. 2007) ........................................... 19-20

*Gallagher v. C.H. Robinson Worldwide, Inc.,*
    567 F.3d 263 (6th Cir. 2009) ....................................... *passim*

*AE ex rel. Hernandez v. County of Tulare,*
    666 F.3d 631 (9th Cir. 2012) ................................................ 3

*McGinest v. GTE Service Corp.,*
    360 F.3d 1103 (9th Cir. 2004) ....................................... 18, 23

*Meritor Savings Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) ...................................................... 3, 10, 17

iii

*National Railroad Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ............................................................... 19

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998) ..................................................... *passim*

*Petrosino v. Bell Atlantic*,
   385 F.3d 210 (2d Cir. 2004) ..................................... *passim*

*Reeves v. C.H. Robinson Worldwide, Inc.*,
   594 F.3d 798 (11th Cir. 2010) ................................... *passim*

*Sheppard v. David Evans & Associates*,
   694 F.3d 1045 (9th Cir. 2012) ........................................... 25

*Steiner v. Showboat Operating Co.*,
   25 F.3d 1459 (9th Cir. 1994) ............................................. 22

*Swinton v. Potomac Corp.*,
   270 F.3d 794 (9th Cir. 2001) ............................................. 23

## Statutes

29 U.S.C. § 216(b) .............................................................. 6

42 U.S.C. § 2000e-2(a)(1) ................................................. 2, 10, 18

## Other Authorities

29 C.F.R. § 1604.11(a)(3) ................................................. 17

5B Charles Alan Wright & Arthur R. Miller, Federal
   Practice and Procedure § 1357 (3d ed. 2022) ..................... 21

7B Charles Alan Wright & Arthur R. Miller, Federal
   Practice and Procedure § 1807 (3d ed. 2022) ..................... 6

Federal Rule of Appellate Procedure 29(a)(2) ......................... 2

Federal Rule of Civil Procedure 12(b)(6) ........................ *passim*

Federal Rule of Civil Procedure 23 ................................... 6

Federal Rule of Civil Procedure 54(b) ....................................................... 9

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission ("EEOC" or "Commission") with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). In this case, plaintiffs—seven women and one man—allege that their employer, S&S Activewear, L.L.C. ("S&S"), exposed them to "violently misogynistic" and "sexually graphic" music in the workplace, ER-86, thus creating a work environment that was discriminatory "because of . . . sex" for purposes of Title VII, 42 U.S.C. § 2000e-2(a)(1). The district court dismissed these claims under Federal Rule of Civil Procedure 12(b)(6), ruling that such music could not be considered part of a sex-based hostile environment claim as to any plaintiff, male or female, because it offended "both men and women" and S&S did not "target[]" the music at any particular "employee or group of employees" of either sex. ER-17, ER-18, ER-21.

The district court's focus on both sexes being offended and whether the employer "targeted" any particular employees, rather than on the conditions in the workplace, was misplaced. In our view, exposing employees to misogynistic and sexually graphic music can be

discrimination because of sex, even where the employer exposes both women and men to the material and even though both women and men find the material offensive. Because the resolution of this issue may affect the ability of the EEOC and private parties to enforce Title VII, the Commission respectfully offers its views to the Court. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF THE ISSUE[1]

Did the district court err in concluding that sexually abusive, violent, and misogynistic music could not be considered part of a sex-based hostile work environment under Title VII as to the claims of seven women and one man, because both men and women were exposed to the music and found it offensive?

## STATEMENT OF THE CASE

### A. Statutory Background

It is "an unlawful employment practice" under Title VII "for an employer . . . to discriminate against any individual with respect to [the] terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). It is well settled that

---

[1] The EEOC takes no position on any other issue raised in this appeal.

plaintiffs may establish such an unlawful employment practice by proving that sex-based harassment "has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). And, the Supreme Court has held, "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

### B.    Factual Background[2]

Plaintiffs here are seven women and one man. ER-83. They all worked in non-managerial positions for S&S, an apparel manufacturer, at S&S's 700,000 square-foot warehouse in Reno, Nevada. ER-84, ER-90.

S&S routinely "allowed sexually abusive and misogynistic 'music' to be . . . played from various locations throughout this large facility." ER-84. Both employees and managers streamed the music from speakers and, "[o]n occasion, various employees placed speakers on a forklift, or other powered vehicles," and drove around the facility

---

[2] Because this is an appeal from a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), this factual recitation is based on the allegations in plaintiffs' complaint, which must be taken as true and construed in the light most favorable to plaintiffs. *See, e.g.*, *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

broadcasting the music. ER-90-91. The music was audible throughout the warehouse, and it contained the "repetitive use of gender-offensive terms such as 'bitch' and 'c__t.'" ER-86. The "violently misogynistic" and "sexually graphic" music included "such musicians as Too [$]hort (see, e.g., 'Blowjob Betty'), and Eminem (see, e.g., 'Stan[]'), Lil Wayne, and other 'rappers.'" ER-86. To illustrate the type of music at issue, the complaint states that S&S often "loudly" played a song that "touts the act of forcibly placing a pregnant woman in the trunk of a vehicle and then driving the vehicle into a river or other body of water, for the purpose of drowning her." ER-92. The complaint also alleges that "'Too [$]hort' . . . routinely writes sexually graphic and very offensive, and misogynistic lyrics," including a song that "references and glorifies prostitution." ER-92.

S&S received daily notice of the music because managers, including high-level ones, were routinely present at the warehouse where the music was audible. ER-93. Many employees, "mostly women," complained to S&S about the music's "obscene and sexually offensive and misogynistic character." ER-93. According to the complaint, "a number of men," including the male plaintiff, Anthony Baker, also

4

"were offended by the manner in which the music portrayed men, and their relationships with women." ER-92; *see also* ER-84 (alleging that Baker and other men "were offended by the music and related conduct 'because of sex'").

The complaint further alleges that S&S permitted the "sexually foul music" "in derogation of the emotional health of many employees whom [S&S] knew, and should have known, would be offended and even traumatized, and re-traumatized." ER-92. A number of employees quit "because of the prevalence of the foul" music and other alleged harassment, as described below. ER-93-94.

S&S sometimes justified playing the music on the ground that it "motivated employees" in the Reno warehouse. ER-93. Despite the numerous complaints, S&S failed to halt the music for almost two years, until it learned that some of the plaintiffs had obtained counsel and intended to take legal action. ER-93.

Aside from the music, S&S tolerated other acts of alleged sexual harassment as well. For instance, male employees "openly shared pornographic videos" in the warehouse and made "[s]exual remarks," and both male employees and supervisors "pantomim[ed] sexual

5

intercourse"—often doing so "in sync with or in conjunction with the music." ER-91, ER-93. More generally, the complaint alleged, S&S treated male employees "in a preferential manner relative to female employees." ER-91.

Plaintiffs filed suit alleging, as relevant here, sex-based harassment under Title VII premised on the music and other acts of harassment. ER-90-94. Plaintiffs also pled "Collective Action Allegations" under 29 U.S.C. § 216(b) based solely on the music, asserting that the music created a sex-based hostile work environment under Title VII, and seeking class-action certification under Federal Rule of Civil Procedure 23 based on the same allegations. ER-85-90.[3]

S&S responded to plaintiffs' complaint by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the conduct was not discriminatory on the basis of sex. ER-48-71. In its

---

[3] The district court recognized that the "collective action" mechanism is available only for claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); ER-16-17; *see also, e.g.*, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1099-1101 (9th Cir. 2018) (clarifying that "collective actions" are unique to the FLSA); 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1807 (3d ed. 2022) (similar). Plaintiffs' complaint, however, lists no claims under the FLSA and instead includes only Title VII causes of action.

6

motion, S&S emphasized that "both men and women were offended by the work environment allegedly created by the music played in the warehouse." ER-52 (emphasis omitted). S&S further observed that "all employees in [its] Reno warehouse were exposed to" the offensive music. ER-57 (emphasis omitted). For their part, plaintiffs asserted that "sexually offensive conduct is potentially actionable, even if both men and women are offended thereby." ER-25. Plaintiffs also argued that "sexual hostility, directed at women, is [not] cured [merely because] that hostility is also directed at men." ER-27. In the alternative, plaintiffs asked the district court for leave to amend their complaint if the court "dismisse[d] any of the[ir] claims." ER-20; *see also* ER-43-44.

## C.    District Court Decisions and Procedural Background

Focusing on the complaint's "Collective Action" section and treating the complaint as alleging a single Title VII sexual harassment claim predicated solely on the music, the district court granted S&S's motion to dismiss in pertinent part. ER-17-18. The court agreed with S&S that the claim failed as a matter of law "because both men and women were offended by the . . . music." ER-17. "Plaintiffs fail to state an actionable Title VII claim," the court added, "because they fail to

7

allege that the offending conduct was discriminatory." ER-18. In reaching this conclusion, the court emphasized that plaintiffs did not allege "that any employee or group of employees were targeted, or that one individual or group was subjected to treatment that another group was not." ER-18. As support for its decision, the court quoted *Oncale*, in which the Supreme Court stated that "[t]he critical issue" in this context "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." ER-17 (quoting 523 U.S. at 80 (citation omitted)).

Addressing plaintiffs' request for leave to amend their complaint, the court held that plaintiffs' "claim regarding music played in the warehouse is fatally flawed and therefore will be dismissed with prejudice." ER-21. Nevertheless, the court observed that plaintiffs' complaint included "cursory allegations of other offensive conduct independent of the offensive music"—that is, the allegations of preferential treatment towards men, men in the warehouse pantomiming sexual intercourse and openly sharing pornography, and so on. ER-21; *see also supra* pp. 5-6. The court granted plaintiffs leave to amend their complaint to develop those allegations, but it reiterated

that plaintiffs could not proceed with the claim involving the music. ER-21-22.

Instead of filing an amended complaint, plaintiffs asked the district court to enter a final judgment and for leave to appeal under Federal Rule of Civil Procedure 54(b) with respect to the claim predicated on the offensive music. ER-8-10. S&S did not oppose this motion and the district court granted it. ER-4, ER-6. Accordingly, the only issue now before this Court is whether the district court erred in deciding, as a matter of law, that the offensive music was not discriminatory on the basis of sex and thus could not even be considered part of a sex-based harassment claim on behalf of any plaintiff, male or female, because it offended both men and women, and because S&S did not "target[]" any particular "employee or group of employees" with it. ER-17-18.[4]

---

[4] The "First Cause of Action" in plaintiffs' complaint alleged "Sexual Harassment" under Title VII on behalf of all eight plaintiffs. ER-90-94. Thus, each plaintiff alleged an individual sexual harassment claim. We therefore refer to these as "claims" in the plural form. Because the district court analyzed the harassment allegations as a "collective action," however, it treated this is a single "claim" in which all plaintiffs could proceed together, or none could. ER-5, ER-17-18.

# ARGUMENT

## Both the female plaintiffs and the male plaintiff plausibly pled harassment because of sex based on the sexually violent and misogynistic music.

The district court erred in holding that the music could not factor into either the female plaintiffs' or the male plaintiff's sex-based hostile work environment claims. Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [the] terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII plaintiffs may establish a violation by proving that "discrimination based on sex has created a hostile or abusive work environment." *Meritor*, 477 U.S. at 66. Although such plaintiffs must ultimately establish several elements, including that the harassment is "sufficiently severe or pervasive 'to alter the conditions of the victim's employment,'" *id.* at 67 (internal brackets and citation omitted), the only element at issue in this appeal is whether the particular music S&S played in its warehouse could constitute "discriminat[ion]" "because of . . . sex" within the meaning of the statute, 42 U.S.C. § 2000e-2(a)(1). And as to that issue, the complaint's factual

10

allegation that S&S permitted violent, misogynistic, and sexually offensive music to be blasted throughout the workplace served to state plausible claims of sex-based harassment.[5]

> ### A. The district court erred in dismissing the seven female plaintiffs' music-based sexual harassment claims with prejudice.

In *Oncale*, the Supreme Court explained that "Title VII does not prohibit all verbal or physical harassment in the workplace"; it is directed only at "discrimination 'because of . . . sex.'" 523 U.S. at 78, 80. There are various ways to meet this standard. *Id.* at 81 (noting the existence of multiple potential "evidentiary route[s]" to prove discrimination because of sex). Certainly, if there is evidence that a supervisor targets an employee with sex-specific and derogatory harassment, or is abusive to women but not to men, that can make the requisite showing. *See id.* at 80-81; *see also, e.g.*, *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844-47 (9th Cir. 2005) (holding that rational trier of fact could find discrimination against three female

---

[5] To be clear, the Commission's argument is based on the uniquely violent, misogynistic, and sexually offensive music at issue in this case. The Commission is not arguing that any genre of music, or even that playing music in the workplace, is inherently problematic.

employees was "because of . . . sex" where "primarily women were the targets" of the supervisor's conduct).

But targeting is not required. Even if an employer exposes men and women alike to the same offensive material, such material can support a female plaintiff's claim of sex-based discrimination where it is degrading to women. *Cf. Oncale*, 523 U.S. at 80 (critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed") (citation omitted). In that situation, a jury could find that sex-specific language and conduct spread throughout the workplace has the effect of exposing female plaintiffs to "disadvantageous terms or conditions of employment" as compared to men exposed to the same material. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 812 (11th Cir. 2010) (en banc) (quoting *Oncale*, 523 U.S. at 80); *see also Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 844-45 ("Title VII is aimed at the consequences or effects of an employment practice and not at the motivation of co-workers or employers." (internal ellipses and citation omitted)). Courts have recognized that words such as "bitch" and "slut" are inherently "gender-derogatory" and "more degrading to women than

to men." *Reeves*, 594 F.3d at 810 (noting that "bitch" refers to a female dog or a malicious, spiteful woman and stating that the word is "firmly rooted in gender" and "humiliating and degrading based on sex" (citation omitted)); *see also id.* at 812 (stating that "whore" traditionally refers to women and that "[c]unt" refers to a "a woman's vagina" and "is the essence of a gender-specific slur").

The district court concluded that the music in S&S's warehouse did not even plausibly allege "discrimination" "because of sex" within the meaning of Title VII because: (1) it offended both women and men; and (2) it was audible throughout the warehouse and thus S&S did not "target[]" or single out any individual or group for adverse treatment by broadcasting the music. ER-17-18. The district court thus dismissed the music-based claims in their entirety. ER-22. The court erred.

### 1. The female plaintiffs stated plausible claims of discrimination because of sex.

It is well-established that hostile work environment plaintiffs may state a claim of discrimination based on sex without alleging that they "were targeted, or that one individual or group was subjected to treatment that another group was not." *Cf.* ER-18 (district court decision strongly suggesting that such "target[ing]" was necessary).

13

Several courts of appeals have held, in cases involving female plaintiffs, that a work environment replete with words or conduct that are "explicitly sexual and patently degrading of women" can constitute "discrimination" "because of sex" under Title VII, even if women were not targeted for the offensive conduct, because it imposes a "greater disadvantage in the terms and conditions of their employment than men." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270-71 (6th Cir. 2009); *see also Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 842-43, 845 (where plaintiffs alleged sex-based hostile work environment for three female employees, "the ultimate question under *Oncale* is whether [the harasser's] behavior affected women more adversely that it affected men").

For instance, as in this case, in *Gallagher* the employer argued that the offensive conduct at issue—co-workers' use of "bitches," "whores" and "cunts," and other offensive comments—was not based on the plaintiff's sex because most of it "was not targeted at" the plaintiff and was "common and indiscriminate." 567 F.3d at 270-71. The Sixth Circuit rejected this argument, stating that it reflected "a mistaken perception of what is required to find that conduct is 'based on sex.'" *Id.*

14

at 270. The court explained that both the conduct directed at the plaintiff and the "indiscriminate conduct" "*is* explicitly sexual and patently degrading of women" and "[t]he natural effect of exposure to such offensive conduct is embarrassment, humiliation and degradation, irrespective of the harasser's motivation." *Id.* at 271. Accordingly, the court held that the plaintiff had adduced sufficient evidence to create "a triable fact issue on the 'based on sex' element." *Id.* at 272.

Likewise, in *Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004), the Second Circuit held that a jury could reasonably find a workplace "discriminatory based on sex" where "sexually offensive comments and graffiti" were omnipresent at the workplace, and "a reasonable person, regardless of gender, would consider" such material to be "more offensive to women than to men." *Id.* at 214 & n.3, 222. And in *Reeves*, the full Eleventh Circuit concluded that a jury could reasonably deem a workplace discriminatory because of sex where much of the offensive conduct was "gender-specific," *e.g.*, co-workers often used words such as "whore," "bitch," and "cunt"—though they did not direct these slurs at the plaintiff herself. 594 F.3d at 811-12.

In these cases, it made no difference that the employer exposed members of both sexes to the allegedly offensive material. *See Gallagher*, 567 F.3d at 271; *see also Petrosino*, 385 F.3d at 221, 223 (rejecting employer's argument, much like S&S's here, that "the common exposure of male and female workers to sexually offensive material necessarily precludes a woman from relying on such evidence to establish a hostile work environment based on sex"); *Reeves*, 594 F.3d at 806, 813 (reasonable jury could find that plaintiff's workplace exposed her "to disadvantageous terms or conditions of employment to which members of the other sex were not exposed" even though "the derogatory language in the office" was used "in the presence of all employees").

Nor was it necessary in these cases for the plaintiffs to show that their employers' motive in tolerating or creating such an environment was grounded in anti-female animus. *See Gallagher*, 567 F.3d at 271, 272 (observing that most of the "offensive conduct [did] not appear to have been motivated by [the plaintiff's] presence or by the fact that she is a woman," but criticizing the trial court, which had found no sex-based discrimination as a matter of law, for "focus[ing] too narrowly on

the motivation for the harassers' offensive conduct rather than on the effects of the conduct on the victim-recipient"); *see also Petrosino*, 385 F.3d at 222 (deeming it irrelevant that "male co-workers would likely have traded sexual insults every morning and defaced terminal boxes with sexual graffiti regardless of [the plaintiff's] presence"); *Reeves*, 594 F.3d at 812-13 (similar); *cf.* 29 C.F.R. § 1604.11(a)(3) (EEOC guideline defining "sexual harassment" to include "verbal . . . conduct of a sexual nature" that "has the purpose *or effect* of . . . creating an intimidating, hostile, or offensive working environment" (emphasis added));[6] *see also Nat'l Educ. Ass'n, Alaska*, 422 F.3d at 844-45 (explaining that plaintiffs do not need to demonstrate that harasser "had a specific intent to discriminate against women or to target them 'as women'" because "Title VII is not a fault-based tort scheme," but instead is "aimed at the consequences or effects of an employment practice" (citation omitted)).

---

[6] Although the EEOC guidelines do not have the force of law, they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor*, 477 U.S. at 65 (citations omitted); *see also id.* (quoting 29 C.F.R. § 1604.11(a)(3)); *Ellison v. Brady*, 924 F.2d 872, 877 (9th Cir. 1991) (discussing guidelines).

Instead, the courts in these cases held that a reasonable juror could conclude that the "gender-derogatory language and conduct" spread throughout the workplace had the effect of exposing the female plaintiffs to "disadvantageous terms or conditions of employment" as compared to men exposed to the same material. *Reeves*, 594 F.3d at 812 (quoting *Oncale*, 523 U.S. at 80); *Gallagher*, 567 F.3d at 271; *see also Petrosino*, 385 F.3d at 221 ("The mere fact that men and women are both exposed to the same offensive circumstances on the job site . . . does not mean that, as a matter of law, their work conditions are necessarily equally harsh."). And thus, the courts found a trial-worthy issue as to "discriminat[ion]" "because of . . . sex" under Title VII, 42 U.S.C. § 2000e-2(a)(1).

This Court has endorsed the same principle in the closely related race context, holding that "if racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) (district court erred when assessing the severity or pervasiveness of harassment in discounting conduct directed at African American plaintiff on the ground that "a white worker[] was

18

also targeted"); *see also, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002) ("Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment.").

And according to this principle, the seven female plaintiffs here set forth plausible sex-based hostile work environment claims predicated on the music. Instead of focusing on whether S&S "targeted" "any employee or group of employees," ER-18, the district court should have addressed whether the music's content was sufficiently "gender specific" and "degrading of women" to qualify as sex-based harassment towards the female plaintiffs. *Reeves*, 594 F.3d at 804; *Gallagher*, 567 F.3d at 271. And if the court had focused on that relevant criterion, it should have reached a different conclusion.

Indeed, as the complaint sets forth, S&S's male managers and employees routinely played "sexually abusive and misogynistic" music throughout the Reno warehouse. ER-84. This music, plaintiffs allege, repeatedly referred to women as "'hos' (slang for 'whore'), bitches and 'c__ts.'" ER-92; *see also, e.g., Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229-30 (1st Cir. 2007) (collecting cases for the proposition that

words like "cunt," "whore," and "bitch" are "sexually degrading, gender-specific epithets" that courts have "consistently held to constitute harassment based upon sex"). The music also "reference[d] and glorifie[d] prostitution," as well as violence against women. ER-92. Thus, this case is on par with *Petrosino*, *Gallagher*, and *Reeves*, for purposes of determining whether harassment is "because of sex." And because those appeals arose at the summary-judgment stage, it follows *a fortiori* that the female plaintiffs' claims here should have survived a Rule 12(b)(6) motion, where the standard is merely that the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, that "mostly women" complained to S&S about the music and S&S did not stop it until plaintiffs obtained an attorney and threatened legal action, ER-93, is additional evidence permitting the inference of sex-based discrimination against women. For instance, in *Reeves*, the Eleventh Circuit noted that a reasonable jury could infer an intent to discriminate because of sex when a female "employee complained to her employer about the humiliating and degrading

nature of the commentary about women as a group and the conduct persisted unabated." 594 F.3d at 811. That principle should apply here, reinforcing the conclusion that the complaint plausibly pled sex-based harassment as to the female plaintiffs.

> ### 2. The fact that a man also alleged music-based sexual harassment does not negate the female plaintiffs' claims.

In concluding that the female plaintiffs' music-based "claim" was "fatally flawed," the district court relied heavily on the fact that "both men and women were offended by the" music. ER-17, ER-21. Under the court's logic, so long as S&S subjected employees to music that at least one man considered offensive based on his sex, then to similarly expose women to misogynistic music could not, as a matter of law, constitute "discriminat[ion]" "because of . . . sex" under Title VII. In effect, the court treated plaintiffs as though they had pleaded themselves out of court because one of them was a man, and they asserted that the music offended men, in addition to women. *See generally* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2022) (explaining that a "plaintiff has pleaded himself or herself out of federal court" where "the complaint itself clearly demonstrate[s] that

whatever interpretation is given to the facts the plaintiff does not have a claim that is legally redress[a]ble" or "there is some insuperable bar to securing relief"). The court's approach in this regard, however, misconstrues both the appropriate legal framework, and the nature of plaintiffs' factual allegations.

First, as a legal matter, the relevant case law leaves open the possibility that an employer may create or tolerate discriminatory working conditions as to *both* men and women. In *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994), for example, this Court rejected an employer's argument, much like S&S's here, that because the alleged harasser abused both men and women, the harassment could not, as a matter of law, constitute discrimination based on sex. *Steiner*, 25 F.3d at 1463. "[E]ven if [the harasser] used sexual epithets equal in intensity and in an equally degrading manner against male employees," this Court explained, "he cannot thereby 'cure' his conduct toward women." *Id.* at 1464. Indeed, *Steiner* refused to "rule out the possibility that *both* men and women" may "have viable claims . . . for sexual harassment" based on the same harasser's conduct. *Id.*

22

And in *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001), a race harassment case, this Court emphasized that the focus must be on the individual plaintiff. This Court held that the plaintiff, who was Black, was not "required to prove that white employees were not subject to similar harassment." *Swinton*, 270 F.3d at 807. That the harasser also engaged in offensive conduct towards "racial or ethnic groups other than African-Americans does not excuse the fact that he racially harassed Swinton." *Id.* In short, *Swinton* held that the employer's "status as a purported 'equal opportunity harasser' provides no escape hatch for liability." *Id.*; *see also McGinest*, 360 F.3d at 1117-18 (similar).

Moreover, the Supreme Court's analysis in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), provides helpful insights into the correct analytical approach here. The *Bostock* Court explained that "Title VII liability is not limited to employers who, through the sum of all of their employment actions, treat the class of men differently than the class of women." 140 S. Ct. at 1742. "Instead," the Court wrote, "the law makes each instance of discriminating against an individual because of that individual's sex an independent violation," and thus an employer who discriminates against both men and women because of sex "doesn't

23

diminish but doubles its liability." *Id.* at 1742-43, 1748. Thus, here, the district court erred in assuming that either women could viably claim discrimination because of sex, or men could do so, but that such claims are mutually exclusive as a matter of law.

Second, as a factual matter, the court erred in viewing the music as a single, monolithic set of material that could either be deemed discriminatory towards women based on their sex, or against men based on theirs, but not both. The court's analysis fails to appreciate that different songs, and even different lyrics within a single song, could contain sex-specific language that is, by turns, demeaning towards both men and women. In that event, it could well be that men *and* women endured work conditions that were discriminatory because of their sex. And here, plaintiffs plausibly alleged that the music discriminated against both men and women based on their respective genders.

### B. The district court erred in dismissing the male plaintiff's music-based sexual harassment claim with prejudice.

The complaint alleges that the music discriminated against men—including the male plaintiff, Anthony Baker—based on sex "because of the manner in which [it] portrayed men, and their relationship with

24

women," and because the men felt powerless to "protect women [from] being openly abused on a daily basis." ER-84, ER-92. Although these allegations are not as robust as the allegations concerning women, to survive a Rule 12(b)(6) motion, this Court has made clear that a complaint need not "contain 'detailed factual allegations.'" *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Taking the allegations in the complaint as true and construing them in the light most favorable to Baker, as is required (*see supra* p. 3 n.2), it is plausible that the music contained lyrics that were demeaning to men, in addition to women—particularly given that the sexual violence the music portrayed may well have cast men as pimps, murderers, or rapists. Without the benefit of discovery, which would have revealed the music's content in detail, it was premature to dismiss Baker's sex harassment claim.

At a minimum, the district court should have granted plaintiffs leave to amend to augment the complaint's allegations of lyrics that were demeaning to men. As the court itself recognized, courts should "freely" "grant leave to amend" "'when justice so requires.'" ER-20

(quoting Fed. R. Civ. P. 15(a)(2)). In district court, the only reason S&S offered against allowing plaintiffs leave to amend is that any such amendment would be futile because plaintiffs had already "admit[ted]" that the music "offended 'members of both genders' alike." ER-65, ER-67. And where, as here, a district court denies leave to amend based on futility, this Court reviews that decision de novo for legal error. *See, e.g., Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021).

As discussed above, *see supra* pp. 22-24, an amendment providing additional factual allegations that the music contained lyrics that were demeaning to men would not be legally futile, as that could constitute "discriminat[ion]" "because of . . . sex" under Title VII as to Baker. And although S&S would in that event be discriminating against both men and women because of sex, that would not eliminate its Title VII exposure, but would instead "double[] it." *Bostock*, 140 S. Ct. at 1741.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be vacated and the case should be remanded for further proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
  *Acting General Counsel*

JENNIFER S. GOLDSTEIN
  *Associate General Counsel*

ANNE NOEL OCCHIALINO
  *Acting Assistant General Counsel*

/s/ Philip M. Kovnat
PHILIP M. KOVNAT
  *Attorney, Appellate Litigation*
   *Services*
  *Office of General Counsel*
  *Equal Employment Opportunity*
   *Commission*
  *131 M St. NE, Fifth Floor*
  *Washington, DC 20507*
  *(202) 921-2702*
  *philip.kovnat@eeoc.gov*

June 15, 2022

27

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-17138

I am the attorney or self-represented party.

**This brief contains** | 5,210 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [         ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Philip M. Kovnat | **Date** | June 15, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                       *Rev. 12/01/2018*