---

**Case No. 21-17138**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**STEPHANIE SHARP; et al.,**

*Plaintiffs-Appellants,*

**v.**

**S & S ACTIVEWEAR, L.L.C.,**

*Defendant-Appellee,*

---

On Appeal from the United States District Court
For the District of Nevada
Case No. 3:20-cv-00654-MMD-CLB
The Honorable Miranda Du

---

**DEFENDANT-APPELLEE S & S ACTIVEWEAR, L.L.C.'S
ANSWERING BRIEF**

---

Sheri Thome, Esq.
Nevada Bar No. 8657
Taylor A. Buono, Esq.
Nevada Bar No. 15513
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
6689 Las Vegas Blvd. South, Suite 200
Las Vegas, NV 89119
Phone: (702) 727-1400
Fax: (702) 727-1401
Sheri.Thome@wilsonelser.com
Taylor.Buono@wilsonelser.com
*Attorneys for Defendant-Appellee*

i

## CORPORATE DISCLOSURE STATEMENT UNDER FRAP 26.1

S & S Activewear, L.L.C. is a limited liability company registered to do business in Nevada.  It has no parent company or any company or corporation that owns 10% of the entity.

273987463v.2

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT UNDER FRAP 26.1 ..................... ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT .........................................................2

ISSUE PRESENTED ...........................................................................3

STATUTORY AUTHORITIES ..............................................................3

STATEMENT OF THE CASE................................................................3

    I.     FACTUAL BACKGROUND ........................................................3

    II.    PROCEDURAL HISTORY ..........................................................4

    III.   THE DISTRICT COURT'S ORDER ..............................................5

SUMMARY OF THE ARGUMENT ........................................................6

STANDARD OF REVIEW ....................................................................8

    I.     DISMISSAL FOR FAILURE TO STATE A CLAIM .................................8

    II.    LEAVE TO AMEND..................................................................9

ARGUMENT ...................................................................................10

    I.     THE PRIMA FACIE CASE FOR SEXUAL HARASSMENT.................10

    II.    THE PLAINTIFFS HAVE NOT ESTABLISHED THAT MUSIC CONSTITUTED DISCRIMINATION "BECAUSE OF SEX." ...............13

        A.    Plaintiffs do not allege members of one sex were exposed to disadvantageous terms of employment to which the other sex was not exposed.................................................................13

        B.    Music that is allegedly offensive to both men and women does not result in harassment "because of sex.".............................................21

        C.    The district court did not impose an "intent" requirement or hold that individuals or groups be specifically "targeted" for harassment. ............25

        D.    There is no sexual harassment merely because words have sexual content. ...................................................................30

        E.    The district court's decision is in line with the purpose of Title VII.......32

III.    LEAVE TO AMEND WOULD HAVE BEEN FUTILE. ..........................35

CONCLUSION ....................................................................................36

STATEMENT OF RELATED CASES .....................................................37

CERTIFICATE OF COMPLIANCE........................................................38

CERTIFICATE OF SERVICE ...............................................................39

RULE 28-2.7 ADDENDUM ...............................................................40

  Table of Contents.............................................................................40

  28 U.S.C. § 1291. Final decisions of district courts ............................41

  28 U.S.C. § 1331. Federal Question ...................................................42

  42 U.S.C. § 2000e-2. Unlawful Employment Practices .......................43

  Fed. R. Civ. P. 8. General Rules Of Pleading......................................50

  Fed. R. Civ. P. 12. Defenses And Objections: When And How Presented; Motion For Judgment On The Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing..............................................................................52

  Fed. R. Civ. P. 54. Judgment; Costs ..................................................55

273987463v.2

# TABLE OF AUTHORITIES

## Cases

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012)................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................9

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ........................................27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................9

*Bermudez v. City of New York*, 783 F. Supp. 2d 560 (S.D.N.Y. 2011) ..................30

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020)................................. 11, 18, 19, 34

*Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310 (2d Cir. 1999) ....................29

*Brown v. Henderson*, 257 F.3d 254 (2d Cir. 2001) ................................................23

*Byrd v. Donahoe*, 2013 U.S. Dist. LEXIS 196938 (N.D. Ga. Oct. 18, 2013)........22

*Chauca v. AdvantageCare Physicians, P.C.*, 2019 U.S. Dist. LEXIS 152074
  (E.D.N.Y. Sept. 5, 2019)................................................................24

*Cobb v. Morningside at Home, Inc.*,
  2009 U.S. Dist. LEXIS 27480 (S.D.N.Y. Mar. 31, 2009)..................................24

*Cook Cub Foods*, 99 F. Supp. 2d 945 (N.D. Ill. 2000)........................................ 21, 22

*Davis v. Cal. Dep't of Corr. & Rehab*, 484 F. App'x 124 (9th Cir. 2012)..............14

*Desardouin v. City of Rochester*, 708 F.3d 102 (2d Cir. 2013)................................12

*Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) ..........................24

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ......................................8

*EEOC v. GNLV Corp.*,
  2014 U.S. Dist. LEXIS 177439 (D. Nev. Dec. 18, 2014) ..................................27

*EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F3d 840 (9th Cir. 2005)................... 14, 26

*Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) ................................................ 14, 15

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)...................................... 30, 33

*Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of
  Educ.*, 896 F.3d 1132 (9th Cir. 2018)................................................................35

*Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154 (9th Cir. 2017) ..............................11

*Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009) .........28

*Holman v. Indiana*, 211 F.3d 399 (7th Cir. 2000) ....................................................12

*Jones v. Target Corp.*,
  2018 U.S. Dist. LEXIS 21888 (E.D.N.Y. Feb. 8, 2018) ............................... 22, 23

*Lehr v. Nike IHM, Inc.*,
  2021 U.S. Dist. LEXIS 79448 (E.D. Mo. Apr. 26, 2021) ....................................23

*Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978)......... 10, 32

*Manatt v. Bank of Am.*, 339 F.3d 792 (9th Cir. 2003) ...................................... 11, 30

*Maner v. Dignity Health*, 9 F.4th 1114 (9th Cir. 2021)............................................30

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) ......................... 15, 16

*McKeithan v. Boarman*, 803 F. Supp. 2d 63 (D.D.C. 2017) ..................................27

v

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .................................. 10, 32
*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988) ....................................9
*Ocheltree v. Scollon Prods.*, 335 F.3d 325 (4th Cir. 2003) ....................................24
*Panelli v. First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016 (D. Nev. 2010) .............10
*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................9
*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) .......................................................33
*Peters v. District of Columbia*, 873 F. Supp. 2d 158 (D.D.C. 2012)......................27
*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004)............................................ 28, 29
*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885 (9th Cir. 2005) .................................27
*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798 (11th Cir. 2010)............30
*Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061 (9th Cir. 2002) ..........................12
*Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017) .......................26
*Simmons v. Safeway, Inc.*, 820 Fed. App'x 579 (9th Cir. 2020) ............................14
*Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004).........................9
*Smith v. State Dep't of Highway Patrol*, 75 F. Supp. 3d 1173 (N.D. Cal. 2014)....30
*Sorge v. Yelp Inc.*, 2019 U.S. Dist. LEXIS 107003 (D. Ariz. June 25, 2019).........23
*Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994) ................. 16, 17
*Stewart v. FCC*, 279 F. Supp. 3d 209 (D.D.C. 2017)...............................................33
*Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) ......................................18
*Williams v. GMC*, 187 F.3d 553 (6th Cir. 1999) ...................................................26
*Yuknis v. First Student, Inc.*, 481 F.3d 552 (7th Cir. 2007)....................................27

## Other Authorities

28 U.S.C. § 1291.......................................................................................................3
28 U.S.C. § 1331.......................................................................................................2
28 U.S.C. § 1343.......................................................................................................2
42 U.S.C. § 1985.......................................................................................................2
42 U.S.C. § 2000e-2..................................................................................................2
42 U.S.C. § 2000e-2(a) ...................................................................................... 10, 13

## Rules

Circuit Rule 28-2.7....................................................................................................3
Fed. R. Civ. P. 12(b)(6).............................................................................................8
Fed. R. Civ. P. 54(b) .................................................................................................3
Fed. R. Civ. P. 8(a)(2)...............................................................................................9

273987463v.2

# INTRODUCTION

Title VII was established with the primary purpose of promoting and maintaining equality in the workplace, regardless of a person's race, color, religion, sex, or national origin.  To effectuate this purpose, Title VII prohibits discrimination in the workplace based on a person's protected characteristics, but does not go so far as to regulate all of an employer's conduct.  The Supreme Court has extended this prohibition against discrimination to include harassment.  However, in order for an employee to state a claim for harassment based on sex, or any other characteristic, the employee must be able to allege, as a threshold matter, that the conduct they experienced constituted discrimination *because of* the protected trait.

At issue in this matter is the district court's dismissal of Plaintiffs' sexual harassment claim based on allegedly offensive rap and hip-hop music that Plaintiffs argue was offensive to both men and women.  The Plaintiffs include seven women and one man who allege that Defendant permitted employees to play sexually explicit and misogynistic rap and hip-hop music over several speakers.  Plaintiffs have alleged that "especially women" and a "number of men" were offended by the content and nature of the music, and thereby were sexually harassed.  The district court ultimately granted Defendant's motion to dismiss Plaintiffs' sexual harassment claim because Plaintiffs failed to allege they

1

experienced discrimination *because of* sex, as the music was offensive to both men and women.

The issue in this matter is rather simple—whether Plaintiffs can allege a hostile work environment based on sex where they claim both men and women were offended by sexually explicit music. A viable hostile work environment claim first requires that the conduct be discriminatory because of sex. Where conduct is allegedly offensive to both men and women, it cannot support a hostile work environment claim as a matter of law because it did not expose either men or women to any disadvantageous terms or conditions of employment. While playing sexually explicit music at the workplace might be inappropriate, such conduct itself does not amount to discrimination because of sex, thus the district court's order should be affirmed.

## JURISDICTIONAL STATEMENT

The district court exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the Plaintiffs' complaint involved a federal question under 42 U.S.C. § 2000e-2.[1]

---

[1] Plaintiffs incorrectly identify 28 U.S.C. § 1343 as grounds for jurisdiction. That statute gives the district courts original jurisdiction over a civil action brought under 42 U.S.C. § 1985 (also known as the Civil Rights Act of 1871). § 1985 prohibits two or more persons from engaging in a conspiracy to prevent an officer from performing duties, obstruct justice, or deprive a person of rights or privileges. Plaintiffs alleged no such conspiracy in their complaint, nor did they bring a cause of action under § 1985.

273987463v.2

This Court has jurisdiction to review final decisions of the district courts. 28 U.S.C. § 1291. This Court has jurisdiction over this appeal pursuant to the district court's order under Fed. R. Civ. P. 54(b), entering partial final judgment as to the Plaintiffs' claim for sexual harassment, the subject of this appeal, and staying the remainder of the case pending the outcome of this appeal. (ER-3-7.)

## ISSUE PRESENTED

Did Plaintiffs allege "discrimination…because of…sex" to support their claims for sexual harassment, when they alleged Defendant allowed music to be played in its warehouse that offended both men and women?

## STATUTORY AUTHORITIES

All relevant statutory and/or regulatory authorities appear in the Addendum to this brief pursuant to Circuit Rule 28-2.7.

## STATEMENT OF THE CASE

## I.     FACTUAL BACKGROUND

S & S Activewear provides wholesale apparel and operates six nationwide distribution centers. One of the distribution centers is located in Reno, Nevada, with over 250 employees in a facility that is over 700,000 square feet. Plaintiffs allege that the employees at the Reno facility consisted of roughly half men and half women. (ER-84 ¶ 2.)

3

Plaintiffs include seven women and one man who were at one time employees at Defendant's Reno facility. (ER-13.) According to Plaintiffs, Defendant allowed managers and employees to play music throughout the facility over approximately five speakers. (ER-84 ¶ 2.) The music was played very loudly so as to be heard throughout the warehouse and over the general background noise of the facility. (ER-84 ¶ 2.) Plaintiffs claim that the music played included obscene rap and hip-hop that was "sexually abusive and misogynistic" and referenced violence towards women and other sexually explicit conduct. (ER-84 ¶ 2.) According to Plaintiffs, "especially women" and "a number of men" were offended by the music "because of sex." (ER-83, 84 ¶ 2.) Two of the seven Plaintiffs allege they were constructively discharged. (ER-94, 95 ¶¶ 28, 33.)

## II.    PROCEDURAL HISTORY

The eight individual Plaintiffs filed charges of discrimination and were issued Right to Sue notices. (SER-20-35) Plaintiffs commenced this action on November 23, 2020 when they filed their complaint in the United States District Court for the District of Nevada. On February 19, 2021, Plaintiffs filed a First Amended Complaint ("FAC"). (ER-83–96.)

On April 23, 2021, Defendant filed a Motion to Dismiss the First Amended Complaint, arguing that Plaintiffs failed to state a plausible claim for sexual harassment because Plaintiffs alleged the music offended both men and women.

4

(ER-48.) Plaintiffs opposed the motion to dismiss, requesting leave to amend if the district court determined dismissal was proper. (ER-23-47.) Defendant filed its Reply in Support of the Motion to Dismiss on May 18, 2021. (SER-3-16.)

## III. THE DISTRICT COURT'S ORDER

The district court, relying on the briefing and without conducting a hearing, issued its order on December 8, 2021, dismissing Plaintiffs' sexual harassment claim.[2] (ER-13.) The district court, relying on *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), found that Plaintiffs did not present an actionable Title VII claim for sexual harassment:

> The eight Plaintiffs bringing this action are seven women and one man, all asserting that the music was subjectively offensive to them and that it was severe enough to constitute a hostile work environment. But Plaintiffs fail to state an actionable Title VII claim because they fail to allege that the offending conduct was discriminatory. The music was played warehouse wide and all employees were subjected to it. Nowhere in the FAC do Plaintiffs assert that any employee or group of employees were targeted, or that one individual or group was subjected to treatment that another group was not. While the music may indeed have been offensive, sexually explicit, and inappropriate for a work environment, the FAC alleges that it was not directed at employees of either sex. Because "Title VII does not prohibit all verbal or physical harassment in the workplace" but rather "is directed only at '*discriminat[ion]* . . .

---

[2] In the motion to dismiss, Defendant also argued that Plaintiffs' claims for retaliation and "collective action" should be dismissed. Those issues are not subject to this appeal. The district court dismissed the "collective action" cause of action as the Plaintiffs improperly referenced an FLSA collective action. (ER-16.) The district court did not dismiss the retaliation claim. (ER-19.)

5

>because of sex," Plaintiffs' claim fails to allege a Title VII
>violation. *See Oncale*, 523 U.S. at 80.
>
>Because Plaintiffs do not assert they were discriminated against
>on the basis of sex, the Court will dismiss the sexual
>harassment claim.

(ER-18.)

The district court also determined that "[a]s Plaintiffs have repeatedly alleged that both men and women were offended by the music, the Court further finds that no amendment could cure the claim and will therefore dismiss it with prejudice." (ER-18.)

## SUMMARY OF THE ARGUMENT

The district court correctly granted Defendant's Motion to Dismiss Plaintiffs' sexual harassment cause of action. Plaintiffs alleged that "especially women" and a "number of men" who worked at Defendant's Reno facility were offended by sexually explicit rap and hip-hop music, which created an offensive and hostile work environment. But a valid sexual harassment claim requires that a plaintiff allege he or she was subjected to discrimination "because of . . . sex." Plaintiffs have not done so here.

To allege discrimination based on sex, a plaintiff has to allege he or she was treated differently than a member of the other sex, and that this different treatment was due to the plaintiff's own sex. Without establishing such disadvantageous treatment, there is no actionable hostile work environment claim because such a

6

claim must be premised on discrimination. Plaintiffs here contend that men and women were offended by the music played at work and that the music was generally played throughout the facility, so everyone could hear it. Therefore, it is a logical fallacy that both genders could be offended by the conduct, yet the conduct still constitutes different treatment of either gender based on sex.

Plaintiffs argue the district court was required to examine the different perceptions men and women might have to allegedly offensive music. Plaintiffs conflate the "because of" requirement with the element that a viable hostile work environment claim requires that conduct be severe or pervasive. Evaluations of whether the perceptions of men and women differ on what is offensive, and whether or not the music was actually offensive are not required to determine whether a person has alleged discrimination because of sex at the motion to dismiss stage. Absent from the complaint is any allegation that the Plaintiffs were subject to disadvantageous terms or conditions of employment that members of the other sex were not subjected to. Music itself cannot constitute discrimination simply because of its explicit nature and Title VII does not impose a general civility code on employers.

Plaintiffs also contend that the district court violated Title VII by requiring them to allege they were specifically targeted for discrimination. Plaintiffs misconstrue the district court's order, as the court did not impose any affirmative

7

requirement that the Plaintiffs allege they were specifically targeted for harassment, or that the conduct was intentional. Rather, the district court properly found that because Plaintiffs had alleged both men and women were offended by the music, they simply did not allege that they were discriminated against "because of sex."

Moreover, if Plaintiffs' arguments are correct, then by their reasoning, anyone who is exposed to subjectively offensive conduct at work can claim it was discriminatory, and thus would have a viable hostile work environment claim. But the purpose of Title VII is to promote equality in the workplace, regardless of sex, not to impose civility codes, or subject employers to litigation over any perceived slight at work, all because someone perceives that it is based on their sex. Title VII, however, employs a but-for standard to determine whether an employer may have engaged in discrimination based on a person's protected characteristic. Plaintiffs' attempt to impose a more lenient standard ignores the true intent of Title VII.

## STANDARD OF REVIEW

## I. DISMISSAL FOR FAILURE TO STATE A CLAIM

A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is reviewed *de novo*. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). A properly pled complaint must provide "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim of relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

## II.    LEAVE TO AMEND

A dismissal without leave to amend is reviewed *de novo*. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004) (noting underlying legal determinations require *de novo* review). Dismissal without leave to amend is proper if it is clear upon *de novo* review that the complaint could not be saved by any amendment. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). A motion for leave to amend may be denied if it appears to be futile or legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

273987463v.2

## ARGUMENT

## I.      THE PRIMA FACIE CASE FOR SEXUAL HARASSMENT.

Title VII of the 1964 Civil Rights Act provides that "it shall be an unlawful employment practice . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of . . . sex[.]" 42 U.S.C. § 2000e-2(a). From this prohibition of discrimination on the basis of sex, the Supreme Court holds that sexual harassment constitutes discrimination "because of sex." *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986); *see also Panelli v. First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016, 1023-24 (D. Nev. 2010) ("Sexual harassment is a species of gender discrimination and thus constitutes a violation of Section 2000e-2."). In holding that sexual harassment violates Title VII, the Supreme Court found that the language of Title VII "envinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Meritor Sav. Bank, FSB*, 477 U.S. at 64 (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)). Thus, to present an actionable sexual harassment claim, a plaintiff has to allege that he or she suffered "*discrimination . . . because of sex.*" *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (emphasis in original); *Meritor*, 477 U.S. at 66 (holding that "a plaintiff may establish a

10

violation of Title VII by proving that discrimination based on sex *has created* a hostile or abusive work environment.") (emphasis added).

The issue presented in this case is whether Plaintiffs sufficiently alleged they were subject to discrimination because of sex. To establish a prima facie hostile work environment claim, a plaintiff must plausibly allege that (1) he or she was "subjected to verbal or physical" harassment because of sex/gender; (2) "the conduct was unwelcome;" and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (citation omitted). And to prevail on a hostile work environment claim, the work environment must be both subjectively and objectively perceived as abusive. *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017). Plaintiffs must also be able to allege that members of one sex were exposed to disadvantageous terms and conditions of employment to which members of the other sex were not exposed. *Oncale*, 523 U.S. at 80.

That the alleged discrimination be "because of sex" means that the discriminatory conduct must be based on a person's characteristic. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (stating that Title VII prohibits employers from taking certain actions because of sex, and that "Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for

11

causation.") (citation omitted). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80; *see also Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1067 (9th Cir. 2002) ("discrimination is the use of some criterion as a basis for difference in treatment . . . . In the context of our civil rights laws, including Title VII, discrimination is the use of a forbidden criterion as the basis for a *disadvantageous* difference in treatment.") (emphasis in original).

"Disadvantageous terms or conditions of employment" based on an individual's sex is the type of discrimination that Title VII prohibits. "It is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his or her] sex." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (citation omitted). "Both before and after *Oncale*, we have noted that because Title VII is premised on eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (emphasis in original).

Plaintiffs here have not alleged facts that they were subjected to *discrimination* because of their sex. Plaintiffs allege that both male and female

12

employees were subject to loud, graphic, and sexually explicit music at work.

(ER-84 at ¶ 2.)  The men and women were subject to the *exact same conduct*—the

music which allegedly was heard throughout the entire facility by all employees.

Plaintiffs therefore fail to satisfy the "because of" test that is required to maintain

an actionable sexual harassment claim.

## II.   THE PLAINTIFFS HAVE NOT ESTABLISHED THAT MUSIC CONSTITUTED DISCRIMINATION "BECAUSE OF SEX."

### A.   Plaintiffs do not allege members of one sex were exposed to disadvantageous terms of employment to which the other sex was not exposed.

Plaintiffs argue that the district ignored *Oncale's* holding when it found that

Plaintiffs did not allege discriminatory conduct.  (AOB-11.)  Plaintiffs contend the

district court ignored Title VII's mandate to get rid of workplace discrimination

and assert that they alleged discrimination "because of sex" because men and

women have different perspectives.  (AOB-11–12, 16.)  Thus, Plaintiffs argue that

the music had the effect of sexual harassment because it offended men and women

in different ways.  (AOB-16–17.)

As established *supra*, a sexual harassment claim requires that a plaintiff

allege that they were exposed to discriminatory conduct "because of . . . sex."  42

U.S.C. § 2000e-2(a).  *Oncale* and its progeny make clear that "Title VII does not

prohibit all verbal or physical harassment in the workplace; it is directed only at

'*discrimination* . . . because of . . . sex." *Oncale*, 523 U.S. at 80. Moreover, a sexual harassment claim requires a plaintiff to establish that he or she was subject to different terms and conditions of employment that members of the opposite sex were not exposed to. *Id.* "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'" *Id.* at 81 (emphasis in original). This includes comparing the differences in treatment of men and women. *Simmons v. Safeway, Inc.*, 820 Fed. App'x 579, 581 (9th Cir. 2020) (noting that whether conduct was based on sex depends on how men and women were treated differently) (citing *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F3d 840, 844 (9th Cir. 2005)). A plaintiff has a viable sexual harassment claim if the plaintiff can show that the allegedly abusive conduct differs in both type and frequency between male and female employees. *See Davis v. Cal. Dep't of Corr. & Rehab*, 484 F. App'x 124, 128 (9th Cir. 2012).

In this case, Plaintiffs and amicus do not distinguish *Oncale's* plain holding. Instead, Plaintiffs heavily rely on this Circuit's decision in *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991), a pre-*Oncale* case, to support their argument that the perception of sexual conduct can amount to discrimination because of sex to support a hostile work environment claim. In *Ellison*, the plaintiff alleged that one

14

particular (male) co-worker sexually harassed her when he made inappropriate advances and wrote letters professing his apparent feelings for the plaintiff and his belief that the two were in a relationship. *Id.* at 874-875. The district court found that the plaintiff did not state a prima facie sexual harassment claim because the conduct was not sufficiently severe or pervasive. *Id.* at 876. Thus, the ultimate question on appeal was whether the conduct was severe or pervasive—which is not the issue presented in the instant appeal. The Ninth Circuit held that in order to evaluate whether conduct was *severe or pervasive*, the court should analyze the alleged harassment from the victim's perspective. *Id.* The *Ellison* court did not address, much less decide, that different perceptions of men and women would satisfy the requirement that the alleged discriminatory harassment itself must be *because of sex*. Plaintiffs' argument that the district court ignored *Ellison's* directive is irrelevant to the issue at hand because *Ellison* involved the severe or pervasive element, not the threshold element that the alleged discrimination be because of sex. Therefore, the *Ellison* decision that victim perspective should be considered when evaluating whether conduct was severe or pervasive is not applicable in this case.

Similarly, Plaintiffs cite to *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) to support their assertion that the district court should analyze the Plaintiffs' unique perceptions of the music to determine if the alleged

15

discrimination was "because of sex." While *McGinest* is a post-*Oncale* decision, it also focused on the question of whether alleged discriminatory conduct was severe or pervasive to alter the conditions of employment, just like in *Ellison*. In *McGinest*, the plaintiff, a black man, alleged there were several instances of discrimination that were both directed at him and directed to members of his class generally. *Id.* at 1107-1111. There, the district court granted summary judgment, discounting the discriminatory conduct and remarks because some behavior was also directed at a white worker. *Id.* at 1117. However, the Ninth Circuit determined that the use of racially charged words to goad both black and white employees only made the conduct more outrageous in the context of determining if the conduct was severe or pervasive. *Id.* at 1118. The district court's decision does not disturb or ignore *McGinest*; the district court here did not reach whether the alleged conduct was severe or pervasive. Also, the racially charged comments directed at the *McGinest* plaintiff were *different* than those directed at the other white employee. But in the instant case, the Plaintiffs claim sex-based offense over the same music allegedly played throughout the warehouse.

Plaintiffs also point to another pre-*Oncale* case to support their argument. In *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994), the defendant casino operator argued that a supervisor "harassed everyone, male and female alike, and therefore his harassment of [the plaintiff] was not based on her gender."

*Id.* at 1463. This Circuit rejected that argument, not simply because both genders were offended by the conduct, but because while the supervisor "was indeed abusive to men . . . **his abuse of women was different**." *Id.* (where the supervisor referred to men as "assholes" but referred to women as "dumb fucking broads" and "fucking cunts," suggesting that the female employee have sex with customers) (emphasis added). Moreover, the *Steiner* supervisor specifically targeted the female plaintiff with specific gender-based conduct, while the supervisor's abuse of men was not related to their gender. *Id.* at 1464. Plaintiffs' current reliance on *Steiner* fails to consider this important distinguishing fact.

In dictum, the *Steiner* court stated that men and women might have viable sexual harassment claims if the male employees could show they were subject to gender-based discrimination that was different from women. *See id.* While the court identified that men could have a viable claim, such a claim would be premised on the man's *different* treatment, and whether it was based on sex, rather than just insulting or other harassing conduct, such as calling them "assholes." *See id.* But here, Plaintiffs do not assert that men and women were subject to wholly different terms and conditions of employment from the other—both men and women allege they were subject to the same sexually offensive music at work. As stated *supra*, that men and women may have been offended to different degrees is

17

not relevant to what Plaintiffs were required to allege—that they were discriminated against because of sex.

In one of the few post-*Oncale* cases Plaintiffs and amicus point to, this Circuit rejected a defendant's argument that a black plaintiff was "required to prove that white employees were not subject to similar harassment." *Swinton v. Potomac Corp.*, 270 F.3d 794, 807 (9th Cir. 2001). There, the black plaintiff was the only black employee of 140 and the evidence showed that the supervisor regularly told racially offensive jokes about black people. *Id.* at 799. There, it is entirely unremarkable that the Ninth Circuit rejected the defendant's argument, as the alleged racial discrimination was obviously specifically directed at the single black plaintiff, which is the definition of discrimination *because of race. See id.* at 807.

Additionally, *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), as cited in Plaintiffs' opening brief and the amicus brief, is inapposite here. *Bostock* involved three cases in which an employer fired a long-time employee shortly after learning the employee was homosexual or transgender, and the employees brought claims for sex-based discrimination. *Id.* at 1737-1738. No claims were brought for sexual harassment or hostile work environment. As Plaintiffs admit, "[t]his is not a disparate impact case . . . ." (AOB-26.) But *Bostock* deals with instances of intentional discrimination because of sex, wherein one group is purposefully

treated differently than another group because of sex.  *See id.* at 1747.  The Supreme Court stated that while sexual harassment falls within Title VII's sweep, it is "conceptually distinct from sex discrimination . . . ."  *Id.* (citing *Oncale*, 253 U.S. at 79-80).

In *Bostock*, the Supreme Court held that employers could not terminate employees because they are gay or transgender, as that fell within the "because of . . . sex" prohibition.  *Id.* at 1754.  The *Bostock* court discussed at length the "because of" test as a but-for test, and rejected the employer's argument in support of a complex or nuanced causation test.  *Id.* at 1747.  The Court reinforced the simple but-for causation test, holding that to terminate a person based on whether they are homosexual or transgender is inherently because of sex, even if homosexuality and transgender status are distinct concepts from sex.  *Id.* at 1747-48.  The Court rejected the argument that employers could equally terminate men and women because of their homosexuality, but that decision is because a person's homosexuality *relies on sex*—the sex of the person and the sex of the person they are attracted to.  *Id.*  Such an application does not apply in this case where the allegedly discriminatory conduct involves playing sexually explicit music.  There is no allegation in the Plaintiffs' complaint that the playing of the music relies on one sex or another, and indeed, Plaintiffs argue that the music contained lyrics that were degrading to both men and women (portraying men as sexual predators and

19

depicting women as victims of violent sex acts). (*See* AOB-23–24.) Therefore, this case is different than that in *Bostock*, where the discrimination ultimately relied a person's sex, rather than being generally offensive.

Plaintiffs concede that their sexual harassment claim is based on the allegation that both men and women were offended by the work environment in the Reno facility. (*See* AOB-19.) The complaint and argument on appeal emphasize that both men and women could be offended and were offended by the music played at Defendant's facility. (*See* ER-84–85, ¶¶ 2, 5.) But by these arguments, it is logically impossible for the Plaintiffs to state an objective claim for sexual harassment due to discrimination because of sex, where there are no allegations that members of one sex were exposed to disadvantageous terms of employment that members of the other sex were not exposed to. Plaintiff's reliance on case law regarding the perceptions of men and women focuses on the severe and pervasive element of sexual harassment—not on whether or not the alleged conduct actually constituted *discrimination* because of sex. If Plaintiffs allege that both men and women were offended by the music, meaning both men and women were subject to allegedly disadvantageous terms of employment, then Plaintiffs simply cannot allege the music constituted discrimination because of sex. Because the Plaintiffs failed to allege they were subject to disadvantageous terms of employment that

20

members of the other sex were not subject to, their sexual harassment claim necessarily fails.

**B.    Music that is allegedly offensive to both men and women does not result in harassment "because of sex."**

The Plaintiffs' opening brief spends time dissecting whether the music was actually offensive and how it was offensive.  (*See* AOB-13–16, 21, 23–26.)  And Plaintiffs and amicus try to distinguish how men and women could be offended differently.  All of this constitutes a red herring—the issue on appeal is whether music that offends both men and women can serve as the basis for a sexual harassment claim, not whether the music allegedly played was actually offensive, to either men or women, as Plaintiffs and amicus contend.  (*See* Amicus Brief at 19.)  Such a fact-finding mission would require the courts to go above and beyond the *Twombly* and *Iqbal* standards in a motion to dismiss, and rather focuses on whether the conduct alleged was severe or pervasive—not whether it was because of sex.  However, the fact that music itself may be offensive does not lead to the conclusion that it was played so that it caused discrimination because of sex.

There are several federal court decisions rejecting hostile work environment claims due to music or other conduct that does not result in discrimination or harassment based on a protected characteristic.  (*See* sources cited at ER-57–61.)  In *Cook Cub Foods*, 99 F. Supp. 2d 945 (N.D. Ill. 2000), the plaintiff, a Lutheran,

21

alleged he was subject to a religiously hostile work environment because the store manager used a bulletin board with Dungeons and Dragons paper and played "Satanic death metal" throughout the store. *Id.* at 948. The district court rejected the harassment claim because the music was not discrimination "because of" the plaintiff's religion. *Id.* at 948-949. *See also*, *Byrd v. Donahoe*, 2013 U.S. Dist. LEXIS 196938, at *40-42 (N.D. Ga. Oct. 18, 2013) (holding that a plaintiff failed to state a hostile work environment religious harassment claim based on allegations that the supervisor sang gospel music and quoted Bible scriptures because the conduct was not directed at any one individual or because of the plaintiff's religious beliefs).

In *Jones v. Target Corp.*, 2018 U.S. Dist. LEXIS 21888 (E.D.N.Y. Feb. 8, 2018), the female plaintiff alleged she was subject to a hostile work environment due to sexist comments about women, being told to dance, and being subject to sexist music at the workplace. *Id.* at *29. The plaintiff also alleged a male coworker invaded her personal space, showed her male underwear, and made a derogatory statement. *Id.* The district court concluded that the plaintiff did not establish a hostile work environment claim because the plaintiff admitted that the allegedly sexist music was played "to keep spirits up working all night" and "that the music was played in front of everyone, men and women . . . ." *Id.* at *32. The district court also noted that "in the absence of evidence suggesting that a

22

plaintiff's sex was relevant, the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex." *Id.* at *33 (quoting *Brown v. Henderson*, 257 F.3d 254 (2d Cir. 2001)). *See also Sorge v. Yelp Inc.*, 2019 U.S. Dist. LEXIS 107003, at *12 (D. Ariz. June 25, 2019) (finding that a heterosexual man who complained of discrimination based on music that was offensive to women and homosexuals did not allege discrimination because of sex because the alleged discrimination was not because of his own sex).

In another recent case, the plaintiff, a white woman, alleged hostile work environment based on race, among other Title VII claims, because she was subjected to allegedly offensive rap music, which she testified was very aggressive, included profanity and the "N" word, talked about gangs and shootings, and promoted violence against white police officers and white people in general. *Lehr v. Nike IHM, Inc.*, 2021 U.S. Dist. LEXIS 79448, at *33 (E.D. Mo. Apr. 26, 2021). However, the plaintiff admitted that the music was not played *because of* her white race, and the court found that the plaintiff offered no evidence that the music was either directed at her or played because of her race. *Id.* at *34. Thus, the district court concluded that the plaintiff's allegations about the rap music could not be tied either directly or indirectly to her race and was a "race-neutral" allegation. *Id.*

23

Conversely, Plaintiffs here have alleged that the music at issue was offensive to both men and women, so the purported offensive conduct was gender-neutral.

It is clear under the law that alleged harassment, of any kind, must be based on the protected characteristic, whether it be race, religion, national origin, or sex. The Third Circuit, in addressing a Title IX harassment claim, rejected the argument that "a sex-neutral policy can give rise to a Title IX claim" because harassment that targets both sexes equally would not violate the law as the discrimination is not "*based on sex*." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534-35 (3d Cir. 2018). Courts have held the same in Title VII claims. The Fourth Circuit held that a female employee did not establish a sexual harassment claim when uncontested evidence showed vulgar behavior was experienced by and equally offensive to all employees, irrespective of gender. *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 340 (4th Cir. 2003). Therefore, the plaintiff could not establish "that she was subject to any meaningful difference in treatment when compared to her co-workers." *Id.* "Because the touchstone of the Title VII inquiry is discrimination, and [defendant's] comments were equally offensive to both men and women, Plaintiff's hostile work environment claim must fail." *Chauca v. AdvantageCare Physicians, P.C.*, 2019 U.S. Dist. LEXIS 152074, at *22 (E.D.N.Y. Sept. 5, 2019) (quoting *Cobb v. Morningside at Home, Inc.*, 2009 U.S. Dist. LEXIS 27480, at *9 (S.D.N.Y. Mar. 31, 2009).

273987463v.2

Because the allegedly discriminatory conduct is therefore not based on sex

or gender, the Plaintiffs have not pled an actionable claim for sexual harassment.

### C. The district court did not impose an "intent" requirement or hold that individuals or groups be specifically "targeted" for harassment.

Plaintiffs and amicus contend that the district court improperly imposed a

targeting or intent requirement on the Plaintiffs' complaint. (AOB-28, Amicus

Brief-12.) Such an argument misconstrues the district court's decision. The

district court made no finding, nor imposed any requirement, that the Plaintiffs

must plead they were specifically targeted for discriminatory conduct. Rather,

because the district court determined the Plaintiffs failed to allege any

discriminatory conduct "because of sex," including any allegation that that the

offensive music was directed at any employee or group of employees. (*See* ER-

18.) That is far from an affirmative requirement of intent or targeting. Instead, the

district court correctly found that because the complaint contained no allegations

that any one employee or group of employees were uniquely and specifically

subject to the allegedly offensive music, the Plaintiffs failed to state a claim for

relief.

In fact, while such targeting is not an affirmative requirement, it is often

referenced in hostile work environment cases, because the plaintiff is required to

allege, at a minimum, that he or she was subject to conduct different than other

25

employees. It logically follows that a plaintiff has to be able to allege he or she was singled out or otherwise had discriminatory conduct directed against him or her that was not directed at other employees. Evidence that an employee or a specific group of employees is targeted with harassment certainly supports a harassment claim. *See EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844-47 (9th Cir. 2005) (holding that plaintiffs adequately plead a claim for sexual harassment when the supervisor's alleged discriminatory conduct primarily targeted women); *Williams v. GMC*, 187 F.3d 553 (6th Cir. 1999) (holding that harassing behavior that is *directed at* women and motivated by discriminatory animus satisfies the "based on sex" requirement of a hostile work environment claim).

The Ninth Circuit, again in assessing whether alleged conduct was sufficiently severe or pervasive, and not whether alleged conduct was "because of" the protected characteristic, has held that "such hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017). It is certainly true that when evaluating whether conduct satisfies the severe and pervasive requirement, courts must look to the totality of the circumstances, which may include conduct that was not directed at a single plaintiff or group, but the conduct itself must be focused on the protected trait. *EEOC v. GNLV Corp.*, 2014

26

U.S. Dist. LEXIS 177439, at *65 (D. Nev. Dec. 18, 2014) (citing *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005)); *see also Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012) ("In determining whether a hostile work environment exists, the court must look at the 'totality of the circumstances,' including whether the comments or actions at issue 'expressly focused' on the plaintiff's protected class." (citing *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 70 n.5 (D.D.C. 2017) and *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)).  However, a court's determination that discriminatory conduct was not directed at an employee or group of employees does not discredit the court's decision, it simply supports a finding that the plaintiff has not adequately alleged that he or she was subject to harassment "because of" a protected characteristic.  *See Yuknis v. First Student, Inc.*, 481 F.3d 552 (7th Cir. 2007) (holding that a former employee's hostile work environment claim failed as a matter of law because none of the alleged offensive conduct or comments were directed towards, or targeted at, that employee).

The amicus asserts that indiscriminate use of derogatory words can support a hostile work environment claim because there is no requirement that the discriminatory conduct be directed at the particular plaintiff.  (*See* Amicus Brief-13-14.)  In their amicus brief, the EEOC cites to several cases to support this contention; all of the cases are distinguishable from the case at hand.

In *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263 (6th Cir. 2009), the employer argued that the plaintiff's sexual harassment claim failed because the use of offensive words like "bitch" were not targeted at the plaintiff. *Id.* at 270. However, the *Gallagher* plaintiff also was specifically subject to targeted insults based on sex that reflected sex-discriminatory animus, such as directly being called a bitch, referred to as a heifer with milking udders, and being taunted by a mostly naked male co-worker. *Id.* at 270-271. While much of the other conduct was not directed at the plaintiff specifically, it was still conduct that was specifically based on the plaintiff's sex—female. *Id.* at 271. There was no allegation that the conduct was offensive to everyone. *Gallagher* also held that the conduct placed women at a greater disadvantage in the terms and conditions of employment than men. *Id. Gallagher* did not hold that the same indiscriminate conduct also altered the terms and conditions of men's employment—only that of women. Likewise, in the Plaintiffs' case, they are not claiming women were placed at a greater disadvantage than men; Plaintiffs argue that both men and women were subject to sexual harassment, and therefore both were subject to the same altered terms of employment (being subject to sexually explicit music).

And in *Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004), cited by the EEOC, the Second Circuit stated "a work 'environment which is equally harsh for both men and women' cannot support a claim for sex discrimination." *Id.* at 221

28

(quoting *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).
*Petrosino* involved crude humor and sexually graphic graffiti that was heard and
viewed by both men and women, but there was generally a "profound disrespect
for women." *Id.* at 214. The plaintiff also had specific gender-based comments
directed at her. *Id.* at 214-15. The *Petrosino* court concluded that a reasonable
person would consider the comments and graffiti more offensive to women than to
men, and therefore, discriminatory based on sex. *Id.* at 222. Thus, the *Petrosino*
case is different from the facts at issue here. While the Plaintiffs allege that the
offensive music was heard by everyone, the Plaintiffs are also specifically arguing
that the conduct at issue offended both men and women, and therefore, it was
discriminatory because of sex.

Here, the district court imposed no specific targeting or intent requirement.
However, the district court's finding that the Plaintiffs did not allege
discrimination because of sex is supported by the fact that Plaintiffs do not claim
that either men or women were treated differently or subject to different terms of
employment due to the allegedly obscene music. Therefore, the district court did
not err when it dismissed Plaintiffs' sexual harassment claim.

**D.    There is no sexual harassment merely because words have sexual content.**

Plaintiffs apparently contend that S & S must have sexually harassed them because the content of the music itself was explicit, derogatory, and obscene.  But even if true, the nature of the content itself does not amount to an actionable claim for sexual harassment.  Title VII is not a general civility code.  *Oncale*, 523 U.S. at 81;  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Manatt*, 339 F.3d at 798 (holding that racially offensive jokes, including pulling eyes back to mock the appearance of Asians, did not amount to a hostile work environment claim); *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) ("But Title VII is not a 'general civility code,' and employment practices are not unlawful simply because they are unwise." (citation omitted)); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) ("Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment."); *Smith v. State Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1180 (N.D. Cal. 2014) ("As the Supreme Court has made clear, concerns about workplace style and grace are not the grist of Title VII Claims. 'Title VII, as we have said, does not set forth 'a general civility code for the American workplace.'"); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) ("'Hostile work environment claims are meant to protect

30

individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency.'"). The purpose of Title VII is to prohibit employers from discriminating against employees because of protected traits. Title VII is not meant to cure every ill at work or regulate all of the employer's conduct.

Plaintiffs cannot assert a sexual harassment claim based solely on music's content. Following Plaintiffs' logic that the music was sexually explicit so it was offensive to both men and women, Plaintiffs' argument would support that any kind of music that is offensive to men and women due to its sexual content is subject to a Title VII sexual harassment claim. While the EEOC contends this case is purely limited to the nature of the music played at Defendant's facility, it is easy to see how this argument could extend to any music that has lyrics that might be offensive to one sex over the other, one religion over another, or one race over another, as many popular songs often have lyrics about stereotypes that someone may construe as offensive. Many categories of music might contain sexist themes and stereotypes that everyone might possibly perceive as offensive. But that cannot lead to viable harassment claims based on the perception of the person who was offended. Allegations that distasteful music was played at work simply cannot establish *discriminatory conduct*. If such were the case, then the doors to Title VII

31

would be opened to anyone who perceived offense by lyrics in a song, ultimately subjecting employers to a "civility code," in violation of Title VII.

Plaintiffs' arguments themselves are premised on stereotypes. Plaintiffs argue the men were offended because they could not "protect" their female colleagues—this a sexist stereotype that men must protect women, or that women need a man's protection. (AOB-13.) Plaintiffs even jump to the conclusion that "[i]f a woman is perceived as willingly acceding to listening to such songs she may be seen as sexually wanton, and available" or that simply enjoying the rap genre itself "may be harmful to [a woman's] career advancement." (AOB-15.) Such stereotypes about the perception of sexual content do not establish whether offensive music constitutes discrimination because of sex.

### E. The district court's decision is in line with the purpose of Title VII.

Plaintiffs argue that the district court's decision eviscerates Title VII. (AOB-22, 32.) However, as established *supra*, the language of Title VII "evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Meritor Sav. Bank, FSB*, 477 U.S. at 64 (quoting *Manhart*, 435 U.S. at 707 n.13). But, courts also remain clear that Title VII does not reach all potentially harassing or offensive conduct, as Title VII is not a general

32

civility code and any harassment must be based on a person's protected characteristic. *See Oncale*, 523 U.S. at 81; *Faragher*, 524 U.S. at 788.

Plaintiffs offer examples to show how the district court's decision violates Title VII. One example Plaintiffs argue will result from the district court's order is that "women in a typing pool are subject to being disrobed by a male boss and spanked. . . . so long as a few men are subjected to the same, sexually abusive behavior." (AOB-9). This example is clearly absurd, as Plaintiffs recognize. Playing sexually explicit music is far from physical assault, on any employee, be it man or woman. Another example Plaintiffs claim will become everyday practice if their sexual harassment claim is dismissed is that employers could permissibly subject all employees, regardless of gender, to watch pornography at work. The Second Circuit has addressed this, finding that while pornography could be equally offensive to men and women, it could still amount to gender-based discrimination if it was "intended to provoke Plaintiff's reaction as a woman." *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007). And such conduct, "while perhaps offensive to both genders" only constitutes harassment when it "serves to intentionally provoke, intimidate and ostracize a female [or male] colleague." *Stewart v. FCC*, 279 F. Supp. 3d 209, 219 (D.D.C. 2017).

Plaintiffs' position is also unworkable. Plaintiffs seek to require district courts everywhere to engage in a psychological analysis of how men and women

33

perceive different conduct to determine whether or not that conduct was discrimination because of sex. (*See* AOB-14-15.) Such a fact-finding mission is not appropriate for the court to engage in when analyzing whether a plaintiff has plausibly alleged discrimination because of sex. Not only do Plaintiffs seek to impose this requirement on courts, they also seek to alter the simple but-for test that all plaintiffs must demonstrate to allege discrimination based on their protected characteristic. *See Bostock*, 140 S. Ct. at 1747.

Instead of determining whether a plaintiff was exposed to discriminatory conduct *because of* sex, Plaintiffs contend anyone can be exposed to discriminatory conduct, and thus have a viable hostile work environment claim, simply because they were offended by some conduct, such as sexually explicit music that has the potential to offend both men and women. Plaintiffs' reading of Title VII would effectively diminish its purpose, and instead of protecting employees from true discriminatory conduct, employers might be forced into litigation for any perceived offense in the workplace, regardless of whether it is based on a protected characteristic, so long as a plaintiff "perceived" offense because of conduct, not whether the conduct was actually *because of* sex. Therefore, a plaintiff's perceptions about offensive conduct could be enough to hail employers into court, regardless of whether the offensive conduct was because of a plaintiff's protected trait. Plaintiffs' reasoning is illogical and unrealistic, and

34

flies in the face of *Oncale* and its progeny, which requires that harassment claims be *based on* the protected characteristic.

## III.   LEAVE TO AMEND WOULD HAVE BEEN FUTILE.

Plaintiffs' opening brief fails to argue that the district court should have granted leave to amend, though the EEOC raises this claim in its amicus brief. *See Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018) ("It is well established that an appellant's failure to argue an issue in the opening brief, much less on appeal more generally, waives that issue . . . ."). The district court correctly determined that amendment of Plaintiffs' complaint would have been futile, as Plaintiffs repeatedly alleged that both men and women were offended by the music. Because this allegation itself was fatal to Plaintiffs' sexual harassment claim, any amendment would be futile as Plaintiffs would not be able to argue that they were subject to any discrimination because of sex, a threshold requirement for their claim. Plaintiffs' opening brief contains no argument that they should be permitted to amend the complaint, or what amendment they could submit that would not be futile. Thus, the district court did not err when it denied Plaintiff's request for leave to amend.

///

35

## CONCLUSION

For the foregoing reasons, S & S Activewear, L.L.C. respectfully submits that the district court's dismissal of Plaintiffs' claim for sexual harassment should be affirmed.

DATED this 8th day of August, 2022.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:  */s/ Sheri Thome*
Sheri Thome, Esq.
Nevada Bar No. 8657
Taylor A. Buono, Esq.
Nevada Bar No. 15513
6689 Las Vegas Blvd. South, Suite 200
Las Vegas, NV 89119
*Attorneys for Defendants-Appellees*

36

# STATEMENT OF RELATED CASES

## 9th Cir. Case Number:  21-17138

The undersigned attorney or self-represented party states the following:

[ X ]  I am unaware of any related cases currently pending in this court.

[ ]    I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]    I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Sheri Thome*             **Date** August 8, 2022

273987463v.2

## CERTIFICATE OF COMPLIANCE

### 9th Cir. Case Number:  21-17138

I am the attorney or self-represented party.

**This brief contains <u>8,367</u> words**, excluding the items exempted by Fed. R. App. P. 32(f).   The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[ X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *_/s/ Sheri Thome___*          **Date:** _August 8, 2022___

38

## CERTIFICATE OF SERVICE

### 9th Cir. Case Number:  21-17138

I hereby certify that I electronically filed **Defendant-Appellee S & S Activewear, L.L.C.'s Answering Brief** on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Signature:** _/s/ Sheri Thome_           **Date:** August 8, 2022

273987463v.2

# RULE 28-2.7 ADDENDUM

## TABLE OF CONTENTS

**Federal Statutes**

28 U.S.C. § 1291…………………………………………………………………41

28 U.S.C. § 1331…………………………………………………………………42

42 U.S.C. § 2000e-2………………………………………………………...43-49

**Federal Rules**

Fed. R. Civ. P. 8………………………………..…………………………...50-51

Fed. R. Civ. P. 12……….…………………………………………………..52-54

Fed. R. Civ. P. 54……………………………….…………………………...55-56

**28 U.S.C. § 1291. FINAL DECISIONS OF DISTRICT COURTS**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

273987463v.2

## 28 U.S.C. § 1331. FEDERAL QUESTION

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

273987463v.2

## 42 U.S.C. § 2000e-2. Unlawful Employment Practices

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**(b) Employment agency practices**

It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

**(c) Labor organization practices**

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

**(d) Training programs**

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship

43

or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

**(e) Businesses or enterprises with personnel qualified on basis of religion, sex, or national origin; educational institutions with personnel of particular religion**

Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, and (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

**(f) Members of Communist Party or Communist-action or Communist-front organizations**

As used in this subchapter, the phrase "unlawful employment practice" shall not be deemed to include any action or measure taken by an employer, labor organization, joint labor-management committee, or employment agency with respect to an individual who is a member of the Communist Party of the United States or of any other organization required to register as a Communist-action or Communist-front organization by final order of the Subversive Activities Control Board pursuant to the Subversive Activities Control Act of 1950 [50 U.S.C. 781 et seq.].

44

**(g) National security**

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position, for an employer to discharge any individual from any position, or for an employment agency to fail or refuse to refer any individual for employment in any position, or for a labor organization to fail or refuse to refer any individual for employment in any position, if—

    (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

    (2) such individual has not fulfilled or has ceased to fulfill that requirement.

**(h) Seniority or merit system; quantity or quality of production; ability tests; compensation based on sex and authorized by minimum wage provisions**

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of title 29.

**(i) Businesses or enterprises extending preferential treatment to Indians**

Nothing contained in this subchapter shall apply to any business or enterprise on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

273987463v.2

**(j) Preferential treatment not to be granted on account of existing number or percentage imbalance**

Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area.

**(k) Burden of proof in disparate impact cases**

(1)

    (A) An unlawful employment practice based on disparate impact is established under this subchapter only if—

        (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

        (ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

    (B)

        (i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

46

       (ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

    (C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

(3) Notwithstanding any other provision of this subchapter, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances Act [21 U.S.C. 801 et seq.] or any other provision of Federal law, shall be considered an unlawful employment practice under this subchapter only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.

**(l) Prohibition of discriminatory use of test scores**

It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.

**(m)   Impermissible consideration of race, color, religion, sex, or national origin in employment practices**

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

**(n)Resolution of challenges to employment practices implementing litigated or consent judgments or orders**

47

(1)

    (A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

    (B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

        (i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

            (I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

            (II) a reasonable opportunity to present objections to such judgment or order; or

        (ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to—

    (A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

    (B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

    (C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

    (D) authorize or permit the denial to any person of the due process of law required by the Constitution.

48

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28.

49

## Fᴇᴅ. R. Cɪᴠ. P. 8. Gᴇɴᴇʀᴀʟ Rᴜʟᴇs Oꜰ Pʟᴇᴀᴅɪɴɢ

**(a)** Claim for Relief. A pleading that states a claim for relief must contain:

**(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

**(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and

**(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

**(b)** Defenses; Admissions and Denials.

**(1)** In General. In responding to a pleading, a party must:

**(A)** state in short and plain terms its defenses to each claim asserted against it; and

**(B)** admit or deny the allegations asserted against it by an opposing party.

**(2)** Denials—Responding to the Substance. A denial must fairly respond to the substance of the allegation.

**(3)** General and Specific Denials. A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

**(4)** Denying Part of an Allegation. A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

**(5)** Lacking Knowledge or Information. A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

**(6)** Effect of Failing to Deny. An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

**(c)** Affirmative Defenses.

**(1)** In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

- accord and satisfaction;
- arbitration and award;
- assumption of risk;
- contributory negligence;
- duress;

50

- estoppel;
- failure of consideration;
- fraud;
- illegality;
- injury by fellow servant;
- laches;
- license;
- payment;
- release;
- res judicata;
- statute of frauds;
- statute of limitations; and
- waiver.

**(2)** Mistaken Designation. If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

**(d)** Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

**(1)** In General. Each allegation must be simple, concise, and direct. No technical form is required.

**(2)** Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

**(3)** Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

**(e)** Construing Pleadings. Pleadings must be construed so as to do justice.

51

**FED. R. CIV. P. 12. DEFENSES AND OBJECTIONS: WHEN AND HOW PRESENTED; MOTION FOR JUDGMENT ON THE PLEADINGS; CONSOLIDATING MOTIONS; WAIVING DEFENSES; PRETRIAL HEARING**

**(a) Time to Serve a Responsive Pleading.**

    **(1)** *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

        **(A)** A defendant must serve an answer:

            **(i)** within 21 days after being served with the summons and complaint; or

            **(ii)** if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

        **(B)** A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

        **(C)** A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

    **(2)** *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

    **(3)** *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

    **(4)** *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

        **(A)** if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

        **(B)** if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

52

**(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

**(1)** lack of subject-matter jurisdiction;

**(2)** lack of personal jurisdiction;

**(3)** improper venue;

**(4)** insufficient process;

**(5)** insufficient service of process;

**(6)** failure to state a claim upon which relief can be granted; and

**(7)** failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**(e) Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

**(1)** on its own; or

**(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**(g) Joining Motions.**

(1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

**(h) Waiving and Preserving Certain Defenses.**

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)–(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

**(i) Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

273987463v.2

## FED. R. CIV. P. 54. JUDGMENT; COSTS

**(a)** Definition; Form. "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings.

**(b)** Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

**(c)** Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

**(d)** Costs; Attorney's Fees.

    **(1)** Costs Other Than Attorney's Fees. Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

    **(2)** Attorney's Fees.

        **(A)** Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

        **(B)** Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

            **(i)** be filed no later than 14 days after the entry of judgment;

            **(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

            **(iii)** state the amount sought or provide a fair estimate of it; and

            **(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

273987463v.2

**(C)** Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

**(D)** Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge. By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

**(E)** Exceptions. Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927.

273987463v.2