**No. 21-17138**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**STEPHANIE SHARP; et al.,**

*Plaintiffs-Appellants*,

**v.**

**S&S ACTIVEWEAR, L.L.C.,**

*Defendant-Appellee,*

_____

On Appeal from the United States District Court
For the District of Nevada
Case No. 3:20-cv-00654-MMD-CLB
The Honorable Miranda Du

_____

**APPELLANTS' REPLY BRIEF**

_____

Mark Mausert
Sean McDowell
729 Evans, Ave.,
Reno, NV 89512
Telephone: (775) 786-5477
Facsimile: (775) 786-9658

*Attorneys for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES………………...……………………………….ii-iii

ARGUMENT………………………………………………………………....1-18

    1.  APPELLEE'S ARGUMENT IGNORES BINDING
        CASELAW………………………………………….………....1-13

    2.  REGULARLY SUBJECTING EMPLOYEES TO SEXUALLY
        GRAPHIC AND VIOLENTLY MISOGYNISTIC MUSIC
        EASILY SUSTAINS A TITLE VII CAUSE OF ACTION.…13-15

    3.  THE DISTRICT COURT'S DECISION IS INIMICAL TO THE
        REMEDIAL PURPOSE OF TITLE VII……………….…..15-16

    4.  BASIC PRINCIPLES OF STATUTORY CONATRUCTION
        CONTRADICT S&S's PROPOSED INTERPRETATION OF
        TITLE VII…………………….………………………………….16-18

CONCLUSION………………………………………………………...…….19

CERTIFICATE OF COMPLIANCE……………………………………...…...20

CERTIFICATE OF SERVICE……………………………………………………21

# TABLE OF AUTHORITIES                     Page:

**Cases**

*Chauca v. Advantagecare Physicians, P.C.*
    2019 U.S. Dist. LEXIS 152074 (E.D.N.Y. Sept. 5, 2019)................12, 13

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
    710 F.3d 946, 958 (9th Cir. 2013)................................................18

*Ellison v. Brady*
    924 F.2d 872 (9th Cir. 1991)...................................................3, 7, 14, 15

*Equal Employment Opportunity Commission v. National Education Association*
    422 F.3d 840 (9th Cir. 2005)..................................................2, 3, 5

*Haggar Co. v. Helvering*
    308 U.S. 389, 60 S.Ct. (1940).................................................17

*Mattell, Inc. v. MCA Records*
    296 F.3d 894, 905 (9th Cir. 2002).............................................18

*McGinest v. GTE Service Corp.*
    360 F.3d 1104 (9th Cir. 2004)..................................................8

*Oncale v. Sundowner Offshore Services, Inc.*
    532 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)..........................2

*Steiner v. Showboat Operating Company*
    25 F.3d 1459 (9th Cir. 1994)................................................3, 9

*United States v. Romero-Bustamante*
    337 F.3d 1104 (9th Cir. 2003)................................................18

*United States v. Texas*
    507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993)..................18

*Wilshire Westwood Assocs. v. Atl. Richfield Corp.*
    881 F.2d 801, 804 (9th Cir. 1989)..........................................18

*Zuniga v. United Can Co.*
    812 F.2d 443, 450 (9th Cir. 1987)……………………………...…………12

**Rules**

FRCP 12………………………………………………………….…….…..10, 11

**Other Authorities**

Federal Communications Commission………………………………...…14, 16

**Argument: APPELLEE'S ARGUMENT IGNORES BINDING CASELAW.**

Appellee (hereinafter "S & S") argues as follows:

Where conduct is allegedly offensive to both men and women, it cannot support a hostile work environment claim as a matter of law because it did not expose either men of women to any disadvantageous terms or conditions of employment.

(Ans. Br. p. 2)

S & S ignores the consequences, i.e., the different effects which rap music typically has, and in this case is specifically alleged to have had, upon many women and some men per the varied lyrics thereof.  It focuses on the fact women and men were subjected to the same music, but that lone factor is not dispositive. S & S writes:

Therefore, it is a logical fallacy that both genders could be offended by the conduct, yet the conduct still constitutes *different treatment* of either gender based on sex.

(Ans. Br. p. 7) (emphasis added).

This theme predominates throughout the Answering Brief, i.e., Title VII is to be applied in a wooden manner so as to reach a truly absurd result.  For example, employers will be encouraged to allow the severest forms of sexual harassment. They will thereby offend at least one male employee and insulate themselves from the tender ministrations of attorneys who represent employees.  So long as sexual

1

misconduct is so egregious as to offend both men and women – Voila!  There is no

sexual harassment.

   And, of course, this analysis does not factor the different manner in which

the lone male employee herein, Anthony Baker, alleges he was offended.  That is,

Mr. Baker was offended, based upon the perspective he harbored as a man, and the

seven women plaintiffs were offended, based on different aspects of the same

music.  The Court has addressed this issue.  *E.E.O.C. v. National Educ. Ass'n,*

*Alaska*, 422 F.3d 840, 845 (9th Cir. 2005).

> Whatever the motive, the ultimate question under *Oncale* is whether
> Harvey's behavior affected women more adversely than it affected men.
> Plaintiffs allege that Harvey's treatment of women employees was "more
> abusive" and that he treated "his female subordinates worse" by "subjecting
> the women to more severe, more frequent, more physically threatening
> abuse."  Defendants deny this allegation.  These charges and their denials
> make a triable question of fact.

So too, in this case the female plaintiffs allege the rap music affected them

differently – because they are women.  That is, they allege they were offended by

the misogynistic language, including gender-specific name-calling, e.g., the use of

the words "bitch" and "cunt".  They allege they were more offended by

descriptions of rape, etc.  Conversely, Mr. Baker alleges he was offended by the

manner in which men were portrayed as sexual predators.  What S & S consistently

does is to ignore these allegations and instead focuses exclusively on the fact both

2

men and women were subjected to the same music. This approach, as noted in the

Opening Brief and in the EEOC's amicus brief, has been repeatedly rejected.

> We have previously held that it is error to conclude that harassing conduct is not because of sex merely because the abuser "consistently abused men and women alike." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). In that case, the sex – or gender-specific character of the abuse directed at female employees was obvious, and summary judgment was clearly inappropriate. *Id.* ("The numerous depositions of Showboat employees reveal that Trenkle was indeed abusive to men, but that his abuse of women was different. It relied on sexual epithets, offensive, explicit references to women's bodies and sexual conduct."). We went on to state that even if the supervisor had "used sexual epithets equal in intensity and in an equally degrading manner against male employees, he cannot thereby 'cure' his conduct toward women.
>
> *Ellison* unequivocally directs us to consider what is offensive and hostile to a reasonable *woman*." *Id.* at 1464.
>
> We acknowledge that our invocation of the "reasonable woman" standard, which renders sex-specific differences in the subjective effects of objectively identical behavior sufficient to ground a claim of discrimination, was rooted in the context of explicitly sex– or gender-specific conduct or speech. We now hold that evidence of differences in subjective effects (along with, of course, evidence of differences in objective quality and quantity) is relevant to determining whether or not men and women were treated differently, even where the conduct is not facially sex – or gender-specific.

422 F.3d at 845-46.

It is the ***effects*** of the music which control – as opposed to the fact both men

and women were subjected to the same music. The District Court ignored *Ellison*

and *E.E.O.C v. National Educ. Ass'n, Alaska* and a host of other, controlling

opinions by this Court. The District Court implicitly assumed men and women

3

were affected in an identical manner. The District Court did not adequately factor the remedial purpose of Title VII, i.e., to ensure workplaces are not permeated with hostility sexuality. In some way, which cannot be intelligibly stated, that one man was offended negated the hostility the women were subject to. The defective reasoning is evident in the absurd nature of the result, i.e., if sexual harassment is gross enough to offend both men and women there is no sexual harassment. A new, unworkable and illogical affirmative defense will be created, i.e., all a Title VII defendant need do is establish a single man was offended, and Title VII will be nullified. It will be open season on the women employees. Neither men or women will be protected from extraordinarily graphic and offensive displays of abusive sexuality. Even if offensive conduct, which permeated a workplace with hostile sexuality, and which offended men and women in an identical manner were at issue, the remedial purpose of Title VII should predominate and control. That is, both men and women would be offended "because of sex" – based on different, gender-oriented perspectives and in, at least slightly, different ways. There is no need to graft on a disparate impact analysis to a hostile work environment cause of action. Doing so serves to negate the remedial purpose of the statute and create an absurd result.

Plaintiffs have alleged they were affected in different ways, e.g., the seven women were offended by gender-specific offensive terms, graphic descriptions of

sexual acts and misogynistic lyrics. The seven women plaintiffs were sensitive to lyrics which implicated the manner in which women were portrayed as sexual objects. Mr. Baker alleges he was offended by the manner in which male sexuality was portrayed, i.e., men were depicted as sexual predators, and by the fact he could not protect women employees with whom he worked. At the end of the day, it is a jury question whether a particular plaintiff, man or woman, was offended "because of sex" by the varied lyrics of numerous songs. "The precise determination of how much qualitative and quantitative difference in treatment is enough circumstantial evidence to support a Title VII claim is a question for the jury." *E.E.O.C. v. National Educ. Ass'n, Alaska*, 422 F.3d at 847. The Court concluded:

> We reverse the summary judgment. There was sufficient evidence for a rational trier of fact to conclude that the alleged harassment by Harvey was both because of sex and sufficiently severe to support a hostile work environment claim under Title VII.

422 F.3d at 847.

S & S implicitly trivializes the sexual hostility plaintiffs endured. It notes Title VII is not intended to impose a civility code. (Ans. Br. p. 8). Plaintiffs allege they were subjected, on a daily basis, for hours each day, to incredibly foul sexual and misogynistic hostility. What is at issue in this case is not some mild indiscretion, e.g., posters of bikini clad women photographed with race cars. What is at issue are varied lyrics which are extraordinarily offensive because of graphic

sexuality and violent misogyny.  S & S's attempt to trivialize should not be well taken.

S & S notes the critical issue "is whether members of one sex are exposed to disadvantageous terms or conditions to which members of the other sex are not exposed." (Ans. Br. p. 12).  Precisely. The question though is not as simple as S & S makes out.   As alleged by plaintiffs the varied lyrics in the multitude of rap songs affected men and women differently. Women were offended by songs which portrayed them as sexual objects, described sexual acts and manifested misogyny and general disrespect for women. Mr. Baker was offended by the way male sexuality was portrayed, e.g., the implication because he is a man, he must be inclined toward abusing women sexually. Did the women take offense at lyrics which did not offend men – or offended men in a different way? That is precisely what the plaintiffs alleged – and what the District Court simply ignored.  The lone male plaintiff was offended in a manner directly linked to his status and identity as a man.  The proposition that, because varied lyrics of abusive songs are foisted off on both male and female employees, sexual harassment cannot, as a matter of law, occur, is facile.  It makes no sense because it ignores the fundamental differences which attend being female versus male.  It over-simplifies a situation by focusing exclusively on the fact both men and women were subjected to the same music, while ignoring the dispositive fact men and women reacted differently to ***varied***

lyrics – some particularly offensive to women and some to men. (See, e.g. Ans. Br. p. 12-13). And, as noted, even if the same lyrics offended both men and women, members of each gender took offense differently – based on the different perspectives which attend being a woman or a man.

S & S attempts to discount *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). See, (Ans. Br. p. 14-15). In order to make its analysis, which turns on a single sentence in a concurring Supreme Court Opinion, viable, S & S has little choice. This Court wrote, ". . ., we believe that in evaluating the severity and pervasiveness of sexual harassment, we should focus on the perspective of the victim." 924 F.2d at 878. In language directly contradictory to S & S's arguments, the Court elaborated:

> We therefore prefer to analyze harassment from the victim's perspective. A complete understanding of the victim's view requires, among other things, ***an analysis of the different perspectives of men and women***.

924 F.2d at 878 (emphasis added).

This Court went on to articulate a commonsense analysis as to why women are often concerned with sexual remarks or conduct which men overlook – or why women are often ***more*** concerned.

> For example, because women are disproportionately victims of rape and sexual assault, women have a stronger incentive to be concerned with sexual behavior. Women who are victims of mild forms of sexual harassment may understandably worry whether a harasser's conduct is merely a prelude to violent sexual assault. Men, who are rarely victims of sexual assault, may

7

> view sexual conduct in a vacuum without a full appreciation of the social setting or the underlying threat of violence that a woman may perceive.

924 F.2d at 879.

And, of course, this is pretty much the scenario which the 7 female plaintiffs allege, i.e., they assert the sexually offensive rap music provided a catalyst for related forms of sexual harassment – directed at women, not at men.  It is of little wonder S & S seeks to trivialize what is probably the most influential Title VII case this Court has decided.

S & S seeks to springboard off the shallow analysis of the District Court, but along the way inadvertently supports appellants' argument, while discussing *McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004).

> Also, the racially charged comments directed at the *McGinest* plaintiff were *different* than those directed at the other white employee. But in the instant case, the Plaintiffs claim sex-based offense over the same music allegedly played throughout the warehouse.

(Ans. Br. p. 16) (emphasis in original).

Precisely.  Here, the female appellants/plaintiffs allege they were offended by *different* lyrics and/or in *different* ways than the male appellant was.  S & S simply glosses over, as the District Court did, the fact the music contained varied lyrics – some offensive to women but not men, or more offensive to women, and

some offensive to men in more or different ways. S & S has inadvertently repudiated its own position.

S & S continues to manifest a fundamental misunderstanding of Title VII while discussing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994). (Ans. Br. p. 16-18).

> But here, Plaintiffs do not assert that men and women were subject to wholly different terms and conditions of employment from the other – both men and women allege they were subject to the same sexually offensive music at work.

(Ans. Br. p. 17).

S & S ignores the fact that, although men and women heard the same music, some of the lyrics offended men and some offended women. For S & S's analysis to control, the fact men were exposed to the lyrics which offended women, but not them, would have to be attended by the ability to negate the offense experienced by the women. There is no basis, in fact, logic or law to support such a conclusion. The District Court's analysis is based on over-simplification and assumption – in derogation of specific allegations made in plaintiffs' complaint. For instance, the District Court, and S & S, ignore a fundamental tenet of Title VII law, i.e., potentially offensive conduct is to be evaluated from the perspective of the potential victim. The District Court, and S & S skirt this basic point and ***assume*** that because men and women were subject to the same music, they reacted in an

9

identical manner to the varied lyrics.  That assumption is belied by the allegations

of appellants – allegations which, for purposes of the adjudication of a Rule 12

motion, should have been regarded as true.

      S & S would distort the First Amended Complaint.

> Plaintiff's reliance on case law regarding the perceptions of men and women focuses on the severe and pervasive element of sexual harassment - not on whether or not the alleged conduct actually constituted *discrimination* because of sex.

(Ans. Br. p. 20).

      This is a self-serving conclusion which is contradicted by the First Amended

Complaint (FAC).  This aspect is discussed in the Opening Brief (See Opening Br.

p. 16-17).   Plaintiffs/appellants described how and why women were offended by

some aspects of the music and why Mr. Baker was offended by others.

Accordingly, while the perceptions of men and women do in fact bear on whether

the conduct was severe or pervasive, the perceptions also bear on whether a

particular man or women subjectively experienced the music as sexual harassment.

Obviously, the men who liked the music did not experience sexual harassment.

They were not offended and subjective offense is an essential element of the cause

of action.

      The FAC reads in material part:

> Many of those co-employees, especially women, expressed their feelings and perceptions – to the effect the music was offensive and degrading ***to women***.

(FAC p.2, lines 17-19); (ER-84); (emphasis added).

S & S alleges plaintiffs/appellants "failed to allege they were subject to disadvantageous terms of employment that members of the other sex were not subject to, . . ." (Ans. Br. p. 20-21). This contention is flatly incorrect. Plaintiffs/appellants do allege men and women were subject to the same music, but they also allege, repeatedly that different lyrics affected men and women differently, i.e., some of the lyrics offended women and not men, and vice versa. Instead of tracking the allegations of the FAC, and respecting the caselaw governing adjudication of a Rule 12 motion, the District Court regarded the music as some monolithic stimulus, which affected men and women in an identical manner. Nowhere in the FAC is such a strange allegation made. And, as noted, in indulging in this assumption the Court ignored express language in the FAC.

S & S invites this Court to trivialize the effect of music which was graphically sexual and misogynistically violent. In some way, which does not survive the light of day, incredibly foul music constitutes a mere violation of some "civility code" – as opposed to sexual harassment. S & S cites a number of cases from other jurisdictions in support of this attempt. (Ans. Br. p. 20, et seq.; 28-29). Those cases did not bind the District Court. The District Court should have

followed the Opinions written by this Court. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (when there is Ninth Circuit authority on point, that authority controls all District Courts within this Circuit).

I do not have space to parse and distinguish each case cited. That being noted, the proposition there is some special quality to music which exempts it from the application of Title VII is inaccurate. The music, which S & S allowed to be loudly played from at least five locations (and sometimes from traveling utility vehicles), was extraordinarily offensive "because of sex". One need read the lyrics of any number of songs, e.g., "Blowjob Betty", to reach this conclusion. Title VII hostile work environment cases are about just that, i.e., a *sexually hostile work environment*. Was the offensive music part of the work environment in S & S's warehouse? Of course. Was the music potentially offensive because of its sexual and misogynistic content? Of course.

S & S quotes a case which indirectly repudiates its argument -- *Chauca v. AdvantageCare Physicians, P.C.*, 2019 U.S. Dist. LEXIS 152074 at *22 (E.D.N.Y. Sept. 5, 2019).

> "Because the touchstone of the Title VII inquiry is discrimination, and [defendant's] comments were *equally offensive* to both men and women, Plaintiff's hostile work environment claim must fail."

(Ans. Br. p. 24) (emphasis added).

Plaintiffs/appellants have made no such allegation. To the contrary, plaintiffs/appellants alleged in their FAC how women and men were offended differently by different lyrics. *Chauca* implicitly repudiates the District Court's reasoning.

**Argument: REGULARLY SUBJECTING EMPLOYEES TO SEXUALLY GRAPHIC AND VIOLENTLY MISOGYNISTIC MUSIC EASILY SUSTAINS A TITLE VII CAUSE OF ACTION.**

S & S characterizes incredibly obscene music as implicating "workplace style and grace". (Ans. Br. p. 30). S & S write, "[p]laintiffs cannot assert a sexual harassment claim based solely on music's content." (Ans. Br. p. 31). Sure they can. A Title VII workplace harassment case is about a work environment. There is no exception for music or any other words, actions, type of venue, images or auditory sounds, etc. If the objected conduct occurs often enough, over a sufficient period of time and is severe enough to permeate a work environment with hostile sexuality, a cause of action for a sexually hostile work environment exists. Furthermore, plaintiffs' case does not rely solely on rap music. Plaintiff have alleged they were subject to sexual hostility in a number of ways, e.g., statements from co-workers; sexual gestures; and hostility which resulted from their opposition to sexual misconduct.

S & S trivializes the content of the rap music. (Ans. Br. p. 31). "Many categories of music might contain sexist themes and stereotypes that everyone

might possibly perceive as offensive.' (Ans. Br. p. 31). This case is not about music which projects only mildly offensive sexist themes and stereotypes. This case is about music which labels women as "bitches", "cunts", "hos" (an abbreviation for "whores"); glorifies and encourages rape; discusses a woman who dies because she swallows too much semen in her windpipe; etc. That is, this case concerns precisely the sort of conduct which has sustained the viability of many sexual harassment cases. See, e.g., *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). The statement, "[a]llegations that distasteful music was played at work simply cannot establish *discriminatory conduct*.", is unsupported. Of course it can. Whether an actionable work environment existed is a jury question – not amenable to resolution via S & S's self-serving, conclusory argument. Resolution of that question turns on the content of the varied songs; how often the music was played; how loudly the music was played; and over what period the music was played. S & S's attempt to trivialize what plaintiffs endured depends on successful characterizing obscene works such as "Blowjob Betty" as a minor indiscretion, i.e., some sort of banal violation of a very loose civility standard. Loudly playing a song which describes the death of a women who ingested too much semen is to be regarded as merely uncivil. The Federal Communications Commission does not see matters this way. If a radio station played such songs, its license to broadcast over the public airwaves would quickly be in peril. That after all, is why the music

14

had to be streamed into speakers with Bluetooth devices, i.e., such music is not

played on the public airwaves.  S & S cannot cite a single case for the proposition

that permeating a work environment with references to women as "cunts" is not

actionable per Title VII.  Per S & S, just about any conduct is to be considered a

mere violation of a "civility code" and therefore discounted.  Voila!  Title VII is

rendered meaningless.

This case is not based on "stereotypes", as alleged by Title VII.  (Ans. Br. p.

32).  It is based on the assertions of seven women and one man.  The women were

offended by the sexually graphic language and by violent misogyny.  Mr. Baker

was offended primarily by the way male sexuality, and men, were portrayed.

Plaintiffs are not relying upon stereotypes to establish sexual harassment.  (Ans.

Br. p. 32). They are relying on their auditory experiences and upon their subjective

reactions thereto.

S & S attempts to turn the proverbial tables, i.e., it accuses plaintiffs of

having indulged in evaluating rap music from the vantage of sexual stereotyping.

(Ans. Br. p. 32).  That is, S & S criticizes plaintiffs for describing the conundrum

women are faced with in a workplace when confronted with sexual stereotyping.

The "stereotyping" of which plaintiffs stand accused is based on common sense

and an understanding of basic human nature.  Plaintiffs' analysis echoes that of this

Court in *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991).

15

**Argument: THE DISTRICT COURT'S DECISION IS INIMICAL TO THE REMEDIAL PURPOSE OF TITLE VII.**

S & S returns to the chimerical position, i.e., that rap music involves application of some sort of civility code, and therefore plaintiffs' argument is "unworkable" because banning even the most offensive rap music songs will involve a laborious "fact-finding" mission.  (Ans. Br. p. 32-35).  One might apprehend from reading S & S's argument the music at issue involves only mild allusions to sex and plaintiffs are hyper-sensitive. Categorizing songs which glorify rape, refer to women as "bitches", whores and "cunts", and describe a woman dying from ingesting semen in her windpipe as violative of Title VII involves minimal inquiry.  Basically, a knee-jerk reaction suffices and results in an accurate conclusion.  S & S's repetitive attempts to lump such filth into the ambit of adjudication encompassed by a "civility code" should not be well taken.  Plaintiffs, and their counsel, understand the difference between minor incivility and incredibly offensive auditory obscenities.  So does, for instance, the Federal Communications Commission.

Particular rap music songs, e.g., "Ain't no Bitch Like the One I Got", "She" and "Blowjob Betty", directly implicate the protected status of both women and men.  Those songs contain incredibly offensive references to women, graphic sexuality, violent misogyny and portray men as rapists and sexual predators.

16

Plaintiffs request the Court read the lyrics of these dubious lyrical exploits, i.e., take judicial notice of them. They are self-explanatory and there is no legitimate question the remedial purpose of Title VII is directly and forcibly implicated.

**Argument: BASIC PRINCIPLES OF STATUTORY CONSTRUCTION CONTRADICT S & S's PROPOSED INTERPRETATION OF TITLE VII.**

S & S's proposed interpretation of Title VII is, in fact, unworkable. It would create an entirely new, and absurd, affirmative defense. Employers would be encouraged, if they are inclined not to enforce Title VII's prohibition against hostile sexuality in the workplace, to go all out, i.e., to facilitate really egregious sexual hostility. That way, at least one man will be offended and Title VII will not apply. Accordingly, the result will not only be absurd, but will be inimical to Congress' purpose. One can imagine any number of crazy scenarios, e.g., a perverted owner who erects big screens and plays bestiality films – incredibly gross depictions of sex between people and animals which are offensive to women and men. Voila! Title VII does not apply and yet the workplace is permeated with incredibly offensive sexuality. Title VII will become a mockery, as will the law in general – and the courts charged with enforcing the law.

In *Haggar Co. v. Helvering*, 308 U.S. 389, 60 S.Ct. 337, 339-40 (1940), the Court wrote:

> All statutes must be construed in light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose. [Citations omitted].

In *United States v. Romero-Bustamante*, 337 F.3d 1104, 1109-10 (9th Cir. 2003), this Court wrote:

> "Where as here, a statute's plain meaning 'produces an absurd, and perhaps unconstitutional result[a, it is] entirely appropriate to consult all public materials, including the background of [the statute] and the legislative history of its adoption." *Mattell, Inc. v. MCA Records*, 296 F.3d 894, 905 (9th Cir. 2002) [other citations omitted].

S & S has focused on a single phrase, and a single sentence in a concurring Opinion, to attempt to eviscerate an entire statutory matrix, and along the way, defeat Congress' intent.

In *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 958 (9th Cir. 2013), this Court wrote:

> We are, however, cautioned against following a literal interpretation of a statute that would thwart the overall statutory scheme or lead to an absurd result. *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989). Although we presume the application of well-established common law principles to a federal statute, this presumption does not apply "when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (citation and quotes omitted). Congress need not "affirmatively proscribe" the common law principle to evince this intent. *Id*. (citation and quotes omitted).

18

**CONCLUSION**

The District Court ignored the prime directive of Title VII, i.e., to ensure workers need not suffer hostile sexuality. The District Court ignored basic differences between men and women and assumed men and women are affected in an identical manner by foul and misogynistic music. The District Court ignored express allegations in the First Amended Complaint and Jury Demand – whereby plaintiffs described how men and women were affected differently. The District Court deviated from established principles of statutory construction so as to arrive at an absurd result which will create a bizarre affirmative defense which will, in many instances, eviscerate Title VII and make a mockery of the law and courts. Plaintiffs/appellants request reversal.

Date: September 21, 2022

LAW OFFICE OF MARK MAUSERT

*/s/ Mark Mausert*
MARK MAUSERT
SEAN McDOWELL

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief contains 4,519 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Date:  September 21, 2022

> LAW OFFICE OF MARK MAUSERT
>
> */s/ Mark Mausert*
> MARK MAUSERT
> SEAN McDOWELL
>
> *Attorneys for Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 21, 2022

LAW OFFICE OF MARK MAUSERT

*/s/ Mark Mausert*
MARK MAUSERT
SEAN McDOWELL

*Attorneys for Appellants*